*1272 OPINION
By the Court,
Rose, J.:
Justice of the Peace Randy Varain (Judge Varain) was issued a public written reprimand and ordered to complete a course in judicial ethics after the Nevada Commission on Judicial Discipline (the Commission) determined that Judge Varain had violated several canons of the Nevada Code of Judicial Conduct. The Commission found that Judge Varain had engaged in an improper ex parte contact with an incarceratéd criminal defendant, and had reassigned the defendant’s case to another judge, after the defendant and the State had entered into a plea agreement.
Judge Varain now appeals from the Commission’s decision, arguing that his contact with the defendant was justified due to his concern for the defendant’s personal safety. Additionally, Judge Varain argues that his administrative reassignment of the defendant’s case was warranted because he had not been informed that the defendant and the State had entered into a plea agreement. We agree. Accordingly, we reverse the Commission’s decision and vacate its imposition of discipline.

*1273
FACTS

Judge Varain serves as a part-time Justice of the Peace in Schurz Township, Mineral County. In January 1996, Bonnie Hughes (Hughes), the Schurz Justice’s Court Clerk, discovered that her fourteen-year-old daughter had become sexually active with a man who was in his mid-twenties. Judge Varain knew both Hughes’ daughter and the man with whom she had become sexually involved.
Upon learning of her daughter’s involvement with a much older man, Hughes went to Judge Varain to ask his advice. Judge Varain recommended that Hughes seek counseling for her daughter, and instructed her to inform the District Attorney’s office of her allegations. Instead, Hughes contacted the Mineral County Sheriffs Department. Hughes had close ties to the sheriffs department because her ex-husband, another close personal friend named Pat Thyne (Dep. Thyne), and her current boyfriend all currently served as deputy sheriffs for Mineral County.
On Friday, February 9, 1996, Hughes went to Dep. Thyne’s home to discuss the matter. Several hours later, at approximately 2:50 a.m., Dep. Thyne put himself on duty, proceeded to the man’s residence, and arrested him. Dep. Thyne contacted Judge Varain at approximately 5:00 a.m. to report his actions and inform him that the defendant was in custody.
Due to the nature of the alleged crime and Hughes’ close ties to the Mineral County Sheriff’s Department, Judge Varain became concerned for the defendant’s personal safety. At approximately 9:00 a.m., Judge Varain proceeded to the county jail to check on the defendant’s welfare; upon his arrival, two Nevada Highway Patrol officers and a Mineral County deputy sheriff accompanied Judge Varain to the defendant’s cell. In response to Judge Varain’s questioning, the defendant indicated that he had not been harmed. With the approval of the district attorney, the defendant was then released from custody on his own recognizance. Thereafter, Judge Varain recused himself from the case, and the matter was reassigned to Justice of the Peace Paul Freitag (Judge Freitag) and set for arraignment on June 7, 1996.
In April 1996, Karen Boyles (Boyles) replaced Hughes as the Schurz Justice’s Court Clerk. Prior to the June 7th hearing, the district attorney and the defendant reached a plea agreement whereby in exchange for a guilty plea on a reduced charge, the defendant would receive probation and a suspended jail sentence. At the June 7, 1996, preliminary hearing, the parties informed Judge Freitag that they had reached a plea agreement; Judge Freitag consented to the resolution of the case in this manner and instructed the parties to submit the written plea agreement to him in Sparks at a later date. Boyles, who was relatively new in her *1274 position as Schurz Justice’s Court Clerk, did not know that the parties had entered into a plea agreement.
After this hearing, Boyles approached Judge Varain and informed him that the parties had left the courthouse without informing her of any decisions that had been made. Consequently, both she and Judge Varain were unaware that the matter had been resolved by way of a plea agreement. Due to their lack of knowledge in the matter, Judge Varain instructed Boyles to assign the case to a different Justice of the Peace, and to draft a letter to the parties informing them of the court’s action.
After receiving Judge Varain’s letter dated June 12, 1996, the district attorney responded by letter dated June 13, 1996.[1] Shortly thereafter, Judge Varain responded to the district attorney’s letter.[2] Additionally, on June 17, 1996, the defendant’s counsel sent a letter to Boyles indicating that any further court appearances were unnecessary in light of the parties’ June 7, 1996, plea agreement before Judge Freitag.
Eventually, the district attorney dismissed all criminal charges against the defendant after the different Justice of the Peace failed to appear at the rescheduled hearing. Thereafter, Hughes filed a complaint with the Commission alleging that Judge Varain had committed judicial misconduct through his handling of the matter. On April 7, 1997, formal charges were filed before the Commission, alleging that Judge Varain had violated numerous Canons of the Nevada Code of Judicial Conduct by conducting an ex parte visitation with the defendant while he was in jail, and by *1275 reassigning the case to a different Justice of the Peace after the parties had entered into a plea agreement before Judge Freitag.
On June 24, 1997, the Commission conducted a formal hearing regarding the allegations against Judge Varain. At this hearing, Judge Varain denied that he had done anything improper, and reiterated that he had visited the defendant while he was in custody due to the unusual circumstances surrounding his 3:00 a.m. arrest and concerns for the defendant’s personal safety. Additionally, Boyles testified that Judge Varain had instructed her to set another court date before a different Justice of the Peace because neither she nor Judge Varain had any knowledge of the parties’ June 7th plea agreement before Judge Freitag.
On August 7, 1996, the Commission entered its findings of fact and conclusions of law. The Commission found that Judge Varain had improperly involved himself in a criminal matter in which he personally knew both the alleged victim and the defendant. Further, the Commission found that by visiting the jail to check on the defendant’s welfare, Judge Varain had engaged in an improper ex parte communication. Lastly, the Commission found that Judge Varain acted improperly by reassigning the case to a different Justice of the Peace after the parties had reached a plea agreement before Judge Freitag on June 7, 1996.
Based on its findings of fact, the Commission concluded that Judge Varain had violated Canons 2(A), 2(B), 3(B)(1), 3(B)(7), and 3(E)(1)(a) of the Nevada Code of Judicial Conduct. Accordingly, the Commission issued a public written reprimand against Judge Varain and ordered him to complete a judicial ethics class at the National Judicial College.
Judge Varain now appeals from the Commission’s decision and imposition of discipline.

DISCUSSION

Judge Varain’s limited involvement in the case, and his communication with an incarcerated criminal defendant, did not constitute violations of the Nevada Code of Judicial Conduct

The Commission concluded that Judge Varain’s direct involvement in the case constituted violations of Canons 2(A),[3] 2(B),[4] and *1276 3(B)(1)[5] of the Nevada Code of Judicial Conduct because he personally knew the alleged victim, the victim’s mother, and the defendant in the case. On appeal, Judge Varain argues that his direct involvement did not affect the merits of the State’s prosecution, but was instead narrowly limited to ensuring the personal safety of an incarcerated defendant who had been arrested under highly unusual circumstances. Further, Judge Varain argues that because he promptly disqualified himself from the case after ensuring that the defendant had not been harmed, his limited involvement was both ethical and appropriate. We agree.
This court’s review of the Commission’s factual findings is confined “to a determination of whether the evidence in the record as a whole provides clear and convincing support for the commission’s findings.” Goldman v. Nevada Comm’n on Judicial Discipline, 108 Nev. 251, 267, 830 P.2d 107, 117-18 (1992). Although we must apply a deferential standard of review to the Commission’s factual determinations, we are not bound by the Commission’s conclusions of law. Id.
A judge need not disqualify himself merely because he is acquainted with the parties appearing before him. Jacobson v. Manfredi, 100 Nev. 226, 230, 679 P.2d 251, 254 (1984). Further, a judge’s decision to not voluntarily disqualify himself in the midst of compelling circumstances should be accorded substantial weight and should not be reversed on appeal absent an abuse of discretion. Goldman v. Bryan, 104 Nev. 644, 649, 764 P.2d 1296, 1299 (1988).
In the instant case, we conclude that Judge Varain’s limited and direct involvement in the matter did not constitute a violation of the Nevada Code of Judicial Conduct. Although Judge Varain directly involved himself in a case in which he personally knew the alleged victim, the victim’s mother, and the defendant, Judge Varain did not have a duty to disqualify himself merely because he knew the parties. See Jacobson, 100 Nev. at 230, 679 P.2d at 254. Further, Judge Varain’s limited involvement was directed at the salutary purpose of guaranteeing the personal safety of an *1277 incarcerated defendant and not towards affecting the merits of the State’s investigation or prosecution. Lastly, because Judge Varain did indeed disqualify himself after taking measures to protect the defendant’s personal safety, we conclude that his limited involvement was both appropriate and commendable.
Likewise, we conclude that Judge Varain’s brief jailhouse communication with the defendant did not constitute an improper ex parte communication in violation of Canon 3(B)(7)[6] of the Nevada Code of Judicial Conduct. Due to the circumstances surrounding the defendant’s 3:00 a.m. arrest by Dep. Thyne, we conclude that exigent circumstances existed which justified Judge Varain’s limited jailhouse contact with the defendant for the purpose of ensuring the defendant’s personal safety. See In The Matter of Judicial Disciplinary Proceedings Against Aulik, 429 N.W.2d 759, 767 (Wis. 1988) (explaining that the prohibition against ex parte contacts is not absolute, and that “[ejxigent circumstances may permit a judge to communicate and act ex parte”). Because Judge Varain limited the scope of his inquiry to the defendant’s well-being, his brief communication with the defendant did not affect the substance or merits of the State’s prosecution. Accordingly, we conclude that Judge Varain’s jailhouse communication with the defendant fell within the purview of the emergency exception contained in Canon 3(B)(7)(a).[7]

Judge Varain did not commit judicial misconduct by administratively reassigning the defendant’s case after he had recused himself from the matter and after the parties had entered into a plea agreement

The Commission concluded that Judge Varain’s reassignment of the case to a different Justice of the Peace constituted a violation *1278 of Canon 3(E)(1)(a)[8] in light of his previous recusal from the case, and the parties’ plea agreement before Judge Freitag on June 7, 1996. On appeal, Judge Varain argues that his administrative reassignment of the case was not evidence of any personal bias, but was instead warranted because neither he nor the Court Clerk knew that the case had been settled. We agree.
The standard for assessing judicial bias is “whether a reasonable person, knowing all the facts, would harbor reasonable doubts about [a judge’s] impartiality.” PETA v. Bobby Berosini, Ltd., 111 Nev. 431, 438, 894 P.2d 337, 341 (1995); see also Richard E. Flamm, Judicial Disqualification § 5.5 (1996). Whether a judge’s “impartiality can reasonably be questioned under an objective standard, however, is a question of law and this court will exercise its independent judgment of the undisputed facts.” Berosini, 111 Nev. at 437, 894 P.2d at 341 (citing Flier v. Superior Court (Perkins), 28 Cal. Rptr.2d 383, 386 (Ct. App. 1994); State v. Rochelt, 477 N.W.2d 659, 661 (Wis. Ct. App. 1991)).
Based on the undisputed facts of this case, we conclude that Judge Varain’s administrative reassignment of the defendant’s case did not constitute a violation of Canon 3(E)(1)(a). While the Commission argues that Judge Varain’s reassignment was improper because both the district attorney and defense counsel had informed Judge Varain by letter that the parties had resolved the case by way of a plea agreement, we note that both letters were sent to Judge Varain after he had made the administrative reassignment to a different pro tem judge.
Although Judge Varain did indeed reassign the case to a different judge after he had recused himself and after the parties had entered into a plea agreement, our review of the record indicates that Judge Varain’s reassignment was an administrative action that did not affect the merits of the case. Further, as Judge Varain testified, the reassignment was largely the result of miscommunication and his lack of knowledge that the case had been settled. The undisputed facts do not create a reasonable doubt concerning Judge Varain’s impartiality. Although Judge Varain’s actions in this matter were not entirely appropriate, and he should not have taken remedial action once he learned that the case had been reassigned, we conclude that his actions did not warrant the punishment that was imposed. Consequently, we conclude that Judge *1279 Varain’s administrative reassignment did not violate Canon 3(E)(1)(a) of the Nevada Code of Judicial Conduct.

CONCLUSION

We conclude that Judge Varain did not violate Canons 2(A), 2(B), and 3(B)(1) by involving himself in a case where he knew the alleged victim, the victim’s mother, and the defendant because exigent circumstances existed which warranted his direct, though limited, involvement. Further, we conclude that Judge Varain’s jailhouse communication with the defendant did not constitute a violation of Canon 3(B)(7) because Judge Varain’s commendable inquiry was limited to ensuring the defendant’s personal safety in light of the defendant’s highly suspicious 3:00 a.m. arrest. Lastly, we conclude that Judge Varain’s reassignment of the case did not constitute a violation of Canon 3(E)(1)(a) in light of Judge Varain’s lack of knowledge that the case had been settled, and because the reassignment was administrative in nature.
Based on the foregoing, we reverse the decision of the Nevada Commission on Judicial Discipline, and direct the Commission to withdraw its public reprimand of Judge Varain and to strike its order compelling him to attend a course in judicial ethics.[9]
Springer, C. J., and Young, J., concur.

 The district attorney’s letter read as follows:
I am in receipt of your letter dated June 12, 1996, and confess I am baffled by its contents. The letter suggests you have entered an order in a matter after you have recused yourself because of a personal conflict of interest. I fail to understand what involvement you can have in this matter, particularly since Judge Freitag has accepted the motions filed in open court on June 7, 1996, and has instructed us to submit the necessary written plea agreement to him for final disposition.
The only valid orders that can be issued must come from Judge Freitag. I must view any other order as tampering. The plea agreement has been made and the matter was continued by Judge Freitag for the purpose of allowing counsel to memorialize the agreement. I believe any order issued by you contravening the arrangements made through Judge Freitag is improper in light of your stated conflict.

 Judge Varain’s second letter read as follows:
I must advise you that Judge Freitag was requested to set in for one particular day because of a conflict with the [defendant’s] case. That case was continued. A new date was set and another Judge was asked to set on that day. Your office does not dictate to this Court on what judge you want to set and hear what cases you want. Any attempt to do so this Court would view as an attempt to control the Judiciary. I fail to see your concern in this matter unless you personally have a reason to interfere with the Court in ensuring an impartial judge in hearing this case.

 Canon 2(A) provides:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

 In relevant part, Canon 2(B) provides:
A judge shall not allow family, social, political or other relationships to influence the judge’s judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the *1276 judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge

 Canon 3(B)(1) provides:
A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.

 In relevant part, Canon 3(B)(7) provides:
... A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding ....

 Canon 3(B)(7)(a) provides:
(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

 Canon 3(E)(1)(a) provides:
(1) A judge shall disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party or a party’s lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

 The Honorable Miriam Shearing did not participate in the decision of this matter.