132 Nev., Advance Opinion 46

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WESLEY ALLEN LEWIS,<br>Appellant,<br>vs.<br>MARIA DANIELA LEWIS, A/K/A<br>MARIA DANIELA PERDOMO,<br>Respondent. | No. 66497<br><br>**FILED**<br><br>JUN 30 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from district court orders modifying child custody and holding appellant in contempt. Eighth Judicial District Court, Family Court Division, Clark County; Gayle Nathan, Judge.

*Affirmed in part, reversed in part, and remanded.*

Greenberg Traurig, LLP, and Tami D. Cowden, Las Vegas,
for Appellant.

Fine & Price Law Group and Frances-Ann Fine, Henderson,
for Respondent.

BEFORE HARDESTY, SAITTA and PICKERING, JJ.

*OPINION*

By the Court, SAITTA, J.:

The Sixth Amendment's right to counsel applies only to criminal proceedings. Thus, in deciding whether that right applies to contempt proceedings, the question is whether the contempt is civil or criminal in nature. This opinion addresses whether a contempt order is required to contain a purge clause, which gives the defendant the

SUPREME COURT
OF
NEVADA

(0) 1947A

16-20452

opportunity to purge himself of the contempt sentence by complying with the terms of the contempt order, in order to be considered civil in nature and avoid invoking the Sixth Amendment's right to counsel.

We hold that a contempt order that does not contain a purge clause is criminal in nature. Because the district court's contempt order in this case did not contain a purge clause, appellant's constitutional rights were violated by imposing a criminal sentence without providing appellant with counsel. We further hold that the district court abused its discretion by improperly basing its decision to modify custody on appellant's failure to comply with a court order and by failing to consider and set forth its findings as to the NRS 125.480(4) (2009) factors for determining the child's best interest.[1]

### FACTUAL AND PROCEDURAL HISTORY

Appellant Wesley Allen Lewis and respondent Maria Daniela Lewis divorced in 2011. They had one minor child at the time of the divorce. The divorce decree awarded Wesley and Maria joint physical custody of the child and imposed upon Wesley an obligation to pay child support to Maria.

In 2013, Maria filed a motion seeking to hold Wesley in contempt of court for lack of payment of child support, among other things. After a hearing, the district court issued an order on October 14, 2013, determining that Wesley had child support arrearages in the amount of $9,012.38. The district court also held Wesley in contempt of court for his failure to pay child support and ordered him to pay $500 for each month

---

[1]NRS 125.480(4) has since been repealed, and the statutory factors for determining the child's best interest have been moved to NRS Chapter 125C.

that he had failed to pay child support, for a total of $5,500. The contempt order further included a jail sentence of ten days for each month that he had failed to pay child support, but the sentence was stayed contingent upon Wesley making all future payments. The district court also found Wesley willfully underemployed and determined Wesley's imputed gross monthly income based on what he would make if fully employed. Based on his imputed income, the district court ordered Wesley to pay child support of $91 per month, $50 per month for one-half of the child's health insurance, and $100 per month for child support arrearages. Lastly, the order required Wesley to take the child to tutoring classes on Mondays after school and to pay one-half of the cost of the tutoring.

In 2014, Maria filed a motion to modify custody and enforce the 2013 order. After a hearing at which Wesley represented himself, the district court entered an order awarding Maria primary physical custody of the child. The order also adopted prior findings from the 2013 order that Wesley was willfully underemployed, and it used Wesley's imputed gross monthly income from that order as the basis to modify his child support obligation subsequent to the modification of the custodial arrangement. The district court's order further required Wesley to continue taking the child to tutoring classes and to pay one-half of those costs. Finally, the district court held Wesley in contempt of court for his failure to pay three months of child support and take the child to tutoring classes over the summer. The district court sentenced Wesley to 20 days in jail for each missed payment and 20 days for the missed tutoring classes, for a total of 80 days. The district court then stayed the contempt sentence on the condition that Wesley "follow the Orders of the Court."

Wesley raises the following issues on appeal: (1) whether the district court violated his Sixth Amendment right to counsel by not appointing him counsel before holding him in criminal contempt, (2) whether the district court abused its discretion by modifying the child custody arrangement, and (3) whether the district court abused its discretion by ordering Wesley to continue to pay for half of the child's tutoring expenses.

## DISCUSSION

### Wesley's Sixth Amendment right to counsel was violated by the district court's contempt order

Wesley argues that because the district court's order of contempt was criminal in nature, he had a Sixth Amendment right to counsel during the proceedings before the district court. We normally review an order of contempt for abuse of discretion. *In re Water Rights of the Humboldt River*, 118 Nev. 901, 907, 59 P.3d 1226, 1230 (2002). However, we review constitutional issues de novo. *Jackson v. State*, 128 Nev. 598, 603, 291 P.3d 1274, 1277 (2012).

#### The district court's contempt order was criminal in nature

> [T]he Sixth Amendment guarantee of the right to counsel applies only in criminal prosecutions. Whether a contempt proceeding is classified as criminal or civil in nature depends on whether it is directed to punish the contemnor or, instead, coerce his compliance with a court directive. Criminal sanctions are punitive in that they serve the purpose of preserving the dignity and authority of the court by punishing a party for offensive behavior. In contrast, civil contempt is said to be remedial in nature, as the sanctions are intended to benefit a party by coercing or compelling the contemnor's future compliance, not punishing them for past bad acts. Moreover, a civil contempt order is indeterminate or

> conditional; the contemnor's compliance is all that is sought and with that compliance comes the termination of any sanctions imposed. Criminal sanctions, on the other hand, are unconditional or determinate, intended as punishment for a party's past disobedience, with the contemnor's future compliance having no effect on the duration of the sentence imposed.

*Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 804-05, 102 P.3d 41, 45-46 (2004) (citations omitted). In *Rodriguez*, the district court issued a contempt order for Rodriguez to spend 25 days in jail for failing to pay child support, with the possibility of early release upon his payment of the outstanding arrearages. *Id.* at 804, 102 P.3d at 45. The *Rodriguez* court reasoned that the contempt order was civil in nature because "[t]he district court's intent was to compel Rodriguez's compliance with the support order for the benefit of his daughter, not to punish him for any ongoing noncompliance." *Id.* at 805, 102 P.3d at 46. Therefore, the court held that the Sixth Amendment right to counsel did not apply to the proceedings. *Id.*

However, the United States Supreme Court has identified an additional factor in determining whether a contempt order is civil or criminal—that is, in order for a contempt order imposing a determinate sentence to be civil in nature, it must contain a purge clause. *Hicks v. Feiock*, 485 U.S. 624, 640 (1988). A purge clause gives the defendant the opportunity to purge himself of the contempt sentence by complying with the terms of the contempt order. *Id.*

Here, the district court issued a contempt order against Wesley for failing to (1) pay child support, and (2) take the child to her tutoring classes, pursuant to a previous court order. The order directed Wesley to serve 80 days in jail, but it stayed the jail sentence contingent

upon Wesley following all future court orders. Thus, like *Rodriguez*, it appears that the district court's intent was to compel Wesley's compliance with the support order for the benefit of his daughter, not to punish him for any ongoing noncompliance. However, the order failed to contain a purge clause that would allow Wesley to purge himself of the contempt sentence. Thus, if the stay was lifted due to a missed payment by Wesley, he would have no way to purge his sentence to avoid or get out of jail. While it is possible that the district court intended for Wesley to be able to purge himself of his sentence and get out of jail in such a situation by paying any missed payment, the order does not so state. Therefore, we hold that because the district court's contempt order did not contain a purge clause, it was criminal in nature and Wesley's Sixth Amendment right to counsel was violated when the contempt order was entered after proceedings in which he was not represented by counsel.[2]

*The district court abused its discretion in its order modifying child custody*

This court reviews modifications of child custody under an abuse of discretion standard. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 241 (2007). "[A] modification of primary physical custody is warranted only when (1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the child's best interest is served by the modification." *Id.* at 150, 161 P.3d at 242. However, when modifying joint physical custody, it is only necessary to

---

[2]Because we are vacating the district court's contempt order and remanding with instructions that Wesley be provided with counsel during any further criminal contempt proceedings if he is found to be indigent, we do not reach the other issues raised by Wesley regarding the contempt order.

consider whether the modification is in the child's best interest. *Rivero v. Rivero*, 125 Nev. 410, 430, 216 P.3d 213, 227 (2009).[3]

The district court's order stated that it was modifying custody because it was in the child's best interest "based on [Wesley's] conduct over the past ten (10) months." The order failed to specify which conduct it was referring to, although the district court did make factual findings in the order that Wesley had child support arrearages and had not followed the court's order to pay half of the child's medical insurance. The district court also (1) found that Wesley was not credible when he testified that he spent two hours a night going over the child's homework, (2) had concerns about Wesley not charging the child's phone so that Maria could have daily contact with the child, and (3) was concerned that Wesley was not taking the child to her tutoring classes. Lastly, the order stated that the district court found Wesley to be in contempt for failing to pay child support and half of the tutoring costs.

The district court also made oral pronouncements as to the best interest of the child, stating:

> You know, Mr. Lewis, in the space of ten months, you demonstrated to The Court by your own behavior in this—your own conduct, I should say, that it's in the best interest of the minor child that I change the custodial arrangement, from not paying your support to not taking her to [tutoring], to ignoring her medical needs, to not making yourself available with a voicemail, to not following my Court orders, even so far as making sure your child's phone stay plugged in and

[3]Appellant does not question the use in Nevada caselaw of differing requirements for modifying joint physical and primary physical custody. Therefore, we do not address that issue here.

charged so that Mom can have access to her, and to the tardies and the absentee record, especially the tardies and the absentee records. Those are significant factors The Court looks at.

*The district court abused its discretion by improperly basing its decision on Wesley's failure to pay child support, medical insurance costs, and tutoring costs*

"This court has made it clear that a court may not use changes of custody as a sword to punish parental misconduct; disobedience of court orders is punishable in other ways." *Sims v. Sims*, 109 Nev. 1146, 1149, 865 P.2d 328, 330 (1993).

Here, the district court appeared to base its order modifying child custody, at least in part, on the fact that Wesley failed to pay child support, his portion of the medical insurance for the child, and his portion of the tutoring costs in violation of a previous court order. The written order stated that the custody modification was in the child's best interest because of Wesley's actions in the months prior to the order, which included his failure to follow the court's order. In its oral pronouncement as to the best interest of the child, the district court specifically spoke of Wesley's failure to pay child support and his failure to follow court orders as factors that it considered. Because Wesley's failure to follow court orders may not be considered as a factor in determining the child's best interest during a modification of custody, we hold that the district court abused its discretion.

*The district court abused its discretion by failing to consider the NRS 125.480(4) (2009) factors in determining the child's best interest*

"In determining the best interest of the child, the court *shall* consider and set forth its specific findings concerning, among other things," the factors set out in NRS 125.480(4). NRS 125.480(4) (2009) (emphasis added). "Specific findings and an adequate explanation of the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

reasons for the custody determination are crucial to enforce or modify a custody order and for appellate review." *Davis v. Ewalefo*, 131 Nev., Adv. Op. 45, 352 P.3d 1139, 1143 (2015) (internal quotation marks omitted). "Without them, this court cannot say with assurance that the custody determination was made for appropriate legal reasons." *Id.*

Here, other than Wesley's failure to follow the court's order, the district court based its determination of the best interest on the finding that Wesley did not attend to the child's medical needs, was not accessible by phone or voicemail, and failed to make the child available to Maria by phone when in Wesley's custody. The district court also considered the child's school tardiness and absentee record while in Wesley's custody, and Wesley's failure to participate in child therapy sessions set up by Maria. While these findings *could* correspond to some of NRS 125.480(4) (2009)'s factors, the district court nonetheless failed to adequately set forth its specific findings as to each factor, and it is unclear from the district court's order and oral findings when read together whether every NRS 125.480(4) (2009) factor was considered. Therefore, we hold that the district court abused its discretion by failing to set forth specific findings as to all of NRS 125.480(4) (2009)'s factors in its determination of the child's best interest during a modification of custody. Because the district court abused its discretion by improperly considering Wesley's failure to comply with court orders and failing to enter specific factual findings as to each of the statutory best-interest-of-the-child factors, we reverse the district court's order modifying child custody.[4]

---

[4]Because the order modifying child support was based upon the order modifying child custody, the order modifying child support is also reversed and should be addressed on remand.

*The district court did not abuse its discretion by ordering Wesley to continue paying for tutoring classes*

Wesley argues that because the minor child tested at or above grade level on the Clark County School District's CRTs and received As and Bs at school, she had completed the conditions of the district court's 2013 order regarding additional tutoring classes. Wesley further argues that there was no evidence to support a finding that the minor child had continuing special education needs, *see* NRS 125B.080(9), and that therefore the district court abused its discretion by ordering Wesley to pay for additional tutoring classes.

The district court's 2013 order stated, in relevant part, that the minor child "shall continue to receive tutoring services until she is testing at or above grade level as tested by [the tutoring school]." Although she was found to be at or above grade level on the Clark County School District's CRTs and received As and Bs at school, she still tested below grade level in math as tested by the tutoring school. Therefore, we hold that the conditions of the district court's 2013 order were not satisfied and the district court did not abuse its discretion by enforcing its 2013 order requiring Wesley to continue to pay for half of the tutoring expenses.

## CONCLUSION

If a contempt order does not contain a purge clause, it is criminal in nature and the Sixth Amendment right to counsel applies. Because the contempt order in this case did not contain a purge clause, we hold that Wesley's constitutional rights were violated when the contempt order was entered against him when he was unrepresented by counsel at the contempt proceedings. Therefore, we vacate the district court's contempt order and order that Wesley be appointed counsel if he is found to be indigent and not already otherwise represented.

We further hold that the district court abused its discretion by improperly considering Wesley's failure to comply with court orders in modifying custody and by failing to specifically set forth specific findings regarding all of NRS 125.480(4) (2009)'s factors. However, the district court did not abuse its discretion by ordering Wesley to pay for additional tutoring classes for the minor child. Therefore, we affirm in part, reverse in part, and remand this case to the district court for further proceedings consistent with this opinion.[5]

_____, J.
Saitta

We concur:

_____, J.
Hardesty

_____, J.
Pickering

---

[5]Wesley also raises the issue of whether judicial bias denied him a right to a fair trial. Because our review of the record does not indicate that a reasonable person would harbor doubts about the district court judge's impartiality, we hold that Wesley was not denied his right to a fair trial. *In re Varain*, 114 Nev. 1271, 1278, 969 P.2d 305, 310 (1998) ("The standard for assessing judicial bias is whether a reasonable person, knowing all the facts, would harbor reasonable doubts about [a judge's] impartiality." (alteration in original) (internal quotation marks omitted)).

SUPREME COURT
OF
NEVADA

(O) 1947A

11