2001 ME 173

**STATE of Maine**

v.

**Thomas PELLETIER.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 15, 2001.

Decided: Dec. 19, 2001.

G. Steven Rowe, Attorney General, Charles K. Leadbetter, State Solititor,

David W. Crook, District Attorney, Evert N. Fowle, Asst. Dist. Atty., Augusta, for State.

J. Mitchell Flick, Winthrop, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Thomas Pelletier appeals from the judgment entered in the District Court (Skowhegan, *Clapp, J.*) holding him in contempt pursuant to M.R. Civ. P. 66(b) and imposing punitive sanctions on him.[1] Pelletier argues that the court failed to find that his conduct actually disrupted the court process or diminished the court's authority. Because the record, supported by the court's findings, establishes that Pelletier engaged in "insolent behavior" which, if unaddressed, "diminishes the court's authority," we affirm.

## I. CASE HISTORY

[¶ 2] On April 18, 2001, Pelletier was representing himself at his arraignment on three charges[2] before the court. At the conclusion of the proceedings, Pelletier turned to leave the courtroom. As he was exiting, the court noticed that Pelletier was wearing an offensive T-shirt. The court called Pelletier back into the courtroom where the following exchange occurred:

> COURT: Mr. Pelletier, turn around. Turn—Turn around. What are you doing wearing something like that in the courtroom?

---

1. Pelletier was committed to the Somerset County Jail for ten days. He challenges the contempt finding but not the sentence.

2. The underlying charges were: Count 1: Operating Under the Influence, 29–A M.R.S.A. § 2411(1)(B) & (5)(B) (1996); Count 2: Unlawful Possession of Scheduled Drug, 17–A M.R.S.A. § 1107(1) & (2)(B) (1983); and Count 3: Civil Possession of Marijuana, 22 M.R.S.A. § 2383 (1992).

DEFENDANT: Well it was the only clean clothes I had, your Honor.

COURT: You're in contempt. Sit over there. Ten days in jail.

Pursuant to M.R. Civ. P. 66(b)(2),[3] the court issued a written order describing its findings and conclusions as follows:

> The Defendant came before the bench when his name was called and was arraigned on the charges. When the Defendant turned and exited the courtroom to the Clerk's Office this presiding judge noticed that the Defendant's shirt had the words "I FUCK LIKE A BEAST" inscribed on the back in large, bold, bright letters easily readable from the back of the courtroom. The courtroom was then heavily populated by other citizens then awaiting their appearance before the court, some accompanied by children. The court immediately called the Defendant back into the courtroom to explain the reasons for this contemptuous behavior. He offered only that he had no other clothes to wear to court. The Defendant's offending shirt was a decorative "T" shirt worn over a long sleeved shirt.
>
> The Defendant's act of displaying this unnecessary and vulgar attire in open court was obviously done with the purpose of disturbing or hindering the court process, showing outward disrespect for the court, and was disorderly conduct and insolent in nature. All of this was done in the actual presence of and seen by this judge.

After serving five days of his sentence, Pelletier appealed.

## II. DISCUSSION

[¶ 3] According to M.R. Civ. P. 66, contemptuous conduct includes but is not limited to "disorderly conduct, insolent behavior, or a breach of peace, noise or other disturbance or action which actually obstructs or hinders the administration of justice or which diminishes the court's authority." M.R. Civ. P. 66(a)(2)(A)(i).[4] Most of our recent precedent has addressed disruptive acts. Thus, we have said that a judgment of contempt must be supported by evidence that "the contumacious conduct 'actually obstructed the administration of justice.'" *State v. Holland*, 1997 ME 42, ¶ 4, 691 A.2d 196, 198 (quoting *In re Bernard*, 408 A.2d 1279, 1282 (Me.1979)). We have said that we will uphold a summary conviction of contempt "when it can 'clearly be shown' that [the] defendant engaged in a wilful and actual obstruction of the administration of justice that presented an overriding need for immediate punishment." *Id.* (citing

3. M.R. Civ. P. 66(b)(2) states:

> (2) *Procedure.* A contempt may be punished summarily if the court certifies that the court saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. Before imposition of sanctions the court shall allow the alleged contemnor an opportunity to be heard in defense and mitigation.
>
> If the court finds that the alleged contemnor committed the contempt, the court shall issue a written order that directly or by incorporation of the record:
>
> (A) specifies the conduct constituting the contempt;

> (B) certifies that the conduct constituting contempt occurred in the presence of the court and was seen or heard by the court;
> (C) contains the sanction imposed.

4. This definition is based on the common law definition of contempt as "an act which is calculated to embarrass, hinder or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity." *In re Bernard*, 408 A.2d 1279, 1281 n. 2 (Me.1979). *See* June 1, 2000, Advisory Committee's Notes to amendments to M.R. Civ. P. 66(a)(2)(A).

*State v. Campbell*, 497 A.2d 467, 472 (Me. 1985)).

[¶ 4] Pelletier focuses on those precedents addressing contempt in the context of an obstruction of the administration of justice. In such a context, some courtroom disruption or disruption of the administration of justice must be found. However, no finding of a specific disruption is needed where a contempt involves insolent behavior that diminishes the court's authority.

[¶ 5] Here, the court found that Pelletier's display "was obviously done with the purpose of disturbing or hindering the court process, showing outward disrespect for the court, and was disorderly conduct and insolent in nature." Mr. Pelletier's purpose, recognized by the trial court, was to taunt, to test, to insult, and to demean the court and its authority. Had the court not responded upon perceiving Mr. Pelletier's vulgar display, respect for its authority and dignity would have been diminished, implying to all present, and others who would have learned of Mr. Pelletier's acts, that this was acceptable decorum in a Maine court of law.

[¶ 6] Pelletier argues that because there was no finding that his vulgar display caused others to create a disturbance in the courtroom, his acts cannot be contemptuous. But the fact that the many spectators, adults and children, sat in appalled or bemused silence, does not make Mr. Pelletier's acts any less contemptuous. It is his acts, not those of the audience, that the trial court was required to judge.

[¶ 7] The trial court based its finding on M.R. Civ. P. 66. Under that rule, " '[c]ontempt' includes but is not limited to: ... insolent behavior ... which diminishes the court's authority." M.R. Civ. P. 66(a)(2)(A)(i). Nothing in this portion of the contempt definition requires a court to find some audience reaction or other disturbance as a prerequisite to finding a contempt had occurred.

[¶ 8] The respect and authority of any court is diminished if a contrived breach of decorum, intended to test and taunt the court's authority, is tolerated without response. The definition of contempt in M.R. Civ. P. 66(a)(2)(A)(i) and its companion definition in M.R.Crim. P. 42(a)(2)(A)(i) encompasses just what occurred in this case.

[¶ 9] One important finding is that Mr. Pelletier wore his T-shirt over a long sleeved shirt. This is important when considered in the context of the court's question to Mr. Pelletier, "What are you doing wearing something like that in the courtroom?" and Mr. Pelletier's response, "Well it was the only clean clothes I had, your Honor." In that exchange, Mr. Pelletier was given an opportunity to explain his actions and gave an obviously false response indicating further disrespect. The trial court had no need for further inquiry or further findings before making its contempt determination. With the response it received, the trial court acted well within its discretion not to engage in further colloquy with Mr. Pelletier in open court with many citizens present.

[¶ 10] The trial court accorded Mr. Pelletier all of the process he was due pursuant to M.R. Civ. P. 66. The contemptuous acts occurred in the court's presence. The trial court offered Mr. Pelletier the opportunity to explain his acts and appropriately ceased further inquiry after Mr. Pelletier's disrespectful response. The trial court's order specified the conduct constituting the contempt, certified that the contempt occurred in the presence of the court, and contained the sanction imposed. M.R. Civ. P. 66(b)(2) requires no more.

■ [¶ 11] The confusion reflected in the briefs, focusing on the obstruction of the administration of justice alternative of the contempt definition, rather than the diminishment of the court's authority alternative of the contempt definition, may be attributable to some imprecision in the trial court's findings. In making findings of contempt, trial courts must specify what conduct constituted the contempt and state, with reference to the alternatives in the contempt definition, what elements of the contempt definition are reflected in a defendant's acts and any reaction it creates.

■ [¶ 12] The importance of the court's written order cannot be overstated. Much of the basis for contempt may be based on visual observation. A transcript may not provide an accurate account of the contemptuous conduct, and may not adequately reflect the atmosphere of the courtroom in the wake of any insult, sign of disrespect or disturbance. The court order can provide a proper description of the behavior that demanded punishment, and its overall effect on the proceedings before the court. Furthermore, "[t]he requirement of a specific recital of the conduct that constitutes [summary] contempt avoids compelling the appellate court to *infer* from a transcript the basis of the contempt." *State v. DeLong*, 456 A.2d 877, 882 (Me.1983). We have stressed that "[b]ecause there are no fact-finding procedures designed to reveal the truth, the findings of the court must be taken as true, undisputed, and complete." *Holland*, 1997 ME 42, ¶ 5, 691 A.2d at 198. Thus, the court's written order is a vital part of the record we review on appeal. *See Alexander v. Sharpe*, 245 A.2d 279, 288 (Me. 1968) ("[O]nly the filing of the certificate can establish a record of what facts the Justice found to be contemptuous."); *see*

*also DeLong*, 456 A.2d at 882 ("[T]he purpose of the rule [requiring a written order from the court] is to provide a basis for appellate review.").[5]

[¶ 13] Here, the trial court order could have been more precise in addressing the impact of Pelletier's insolent and vulgar display in relation to the definition of contempt. However, on this record there is no real dispute regarding the nature and impact of Mr. Pelletier's contempt. The trial court acted appropriately to address a serious breach of decorum and to assure that respect for the authority and dignity of the court was not diminished.

The entry is:

Judgment affirmed.

RUDMAN, J., files a dissenting opinion joined by CALKINS, J.

RUDMAN, J., with whom CALKINS, J., joins, dissenting.

[¶ 14] I respectfully dissent.

[¶ 15] According to Civil Rule 66, contemptuous conduct includes but is not limited to "disorderly conduct, insolent behavior, or a breach of peace, noise or other disturbance or action which actually obstructs or hinders the administration of justice or which diminishes the court's authority." M.R. Civ. P. 66(a)(2)(A)(i). We have made it clear that a judgment of contempt must be supported by evidence that "the contumacious conduct 'actually obstructed the administration of justice.'" *State v. Holland*, 1997 ME 42, ¶ 4, 691 A.2d 196, 198 (quoting *In re Bernard*, 408 A.2d 1279, 1282 (Me.1979)). In the past, we have upheld a summary conviction of contempt "if it can 'clearly be shown' that [the] defendant engaged in a wilful and actual obstruction of the administration of

---

5. The affidavits filed by the Amicus are not part of the record subject to our review.

justice that presented an overriding need for immediate punishment." *Id.* (citing *State v. Campbell*, 497 A.2d 467, 472 (Me. 1985)). This logic compels a similar result when we review a conviction of contempt based on an act asserted to have diminished the court's authority.

[¶ 16] It goes without argument that a judge's power to summarily punish contemptuous behavior is instrumental in maintaining civility and decorum in a courtroom. This authority, however, carries with it the potential for abuse. The United States Supreme Court has warned that although the summary contempt power is "indispensable" in protecting "the dignity of the court ..., its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions." *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767 (1925). We have described the summary contempt proceeding as an "anomalous situation [with] the function of judge, jury and prosecutor combined in a single individual." *In re Bernard*, 408 A.2d 1279, 1282 (Me. 1979). Moreover, we recognized that because of the unique nature of these proceedings, they should be "strictly guarded by the courts." *Id.*

[¶ 17] A court's use of its summary powers is limited to situations which require immediate action to control and maintain the order and dignity of the court. *Id.* Thus, conduct that warrants the use of this power will often arise unexpectedly and without warning. Upon the exercise of this power, our rules require the court to issue a written order which fully explains the circumstances that necessitate its use. M.R. Civ. P. 66(b)(2). The written order

must: "(A) specif[y] the conduct constituting the contempt; (B) certif[y] that the conduct constituting contempt occurred in the presence of the court and was seen or heard by the court; (C) contain[ ] the sanction imposed." *Id.*

[¶ 18] The importance of the court's written order cannot be overstated. The trial transcript may not provide an accurate account of the contemptuous conduct, and may not adequately reflect the atmosphere of the courtroom in the wake of the disturbance. The court, however, is in an excellent position to provide a proper description of the obnoxious behavior which demanded punishment, and the overall effect of that behavior on the proceedings before the court. Furthermore, "[t]he requirement of a specific recital of the conduct that constitutes [summary] contempt avoids compelling the appellate court to *infer* from a transcript the basis of the contempt." *State v. DeLong*, 456 A.2d 877, 882 (Me.1983). We have also stressed that "[b]ecause there are no fact-finding procedures designed to reveal the truth, the findings of the court must be taken as true, undisputed, *and complete.*"[6] *Holland*, 1997 ME 42, ¶ 5, 691 A.2d 196, 198 (emphasis added). It is for these reasons that the court's written order constitutes the record we review on appeal. *See Alexander v. Sharpe*, 245 A.2d 279, 288 (Me. 1968) ("[O]nly the filing of the certificate can establish a record of what facts the Justice found to be contemptuous."); *see also DeLong*, 456 A.2d at 882 ("[T]he purpose of the rule [requiring a written order from the court] is to provide a basis for appellate review.").[7]

---

6. Although *State v. Holland* is directly concerned with summary contempt under M.R.Crim. P. 42(a), the court's analysis can equally be applied to summary contempt under M.R. Civ. P. 66(b).

7. The affidavits filed by the Amicus are not part of the record subject to our review.

[¶ 19] Pelletier, the Attorney General, and the Amicus all direct their attention to the requirement that the conduct must obstruct or hinder the administration of justice. Our analysis would be the same were the conduct alleged to have diminished the court's authority. The question is not whether we conclude that Pelletier's shirt was vulgar and disrespectful; clearly it was. Nor is the question whether we conclude that such attire has no place in a court of law and potentially could have obstructed or hindered the administration of justice or diminished the court's authority. Instead, the real issue is whether Pelletier's actions actually effected those results. To determine this, we look to the trial court's order and should not speculate. In the present case, there is nothing in the court's written order to support a finding that such a disturbance did occur or that the court's authority was diminished. Had the court noticed any actual disruption in the courtroom resulting from Pelletier's shirt, or that the court's authority was diminished, it should have clearly noted it in its written order. Instead, the court simply determined ·that Pelletier's conduct "was obviously done with the purpose of disturbing or hindering the court process and showing outward disrespect for the court and was disorderly conduct and insolent in nature." *State v. Pelletier*, No. CR–01–737 (Me.Dist.Ct.12, Sko., Apr. 18, 2001) (*Clapp, J.*). Because the court's findings failed to describe how Pelletier's conduct *actually* caused a disruption in the courtroom or diminished the court's authority, there is no basis for us to affirm the judgment.

[¶ 20] The purpose of M.R. Civ. P. 66(a) "is to present to a reviewing court a full and clear statement of the facts out of which the contempt arose so that that court may determine whether the action of the committing court was within its jurisdiction and whether its action was just or

arbitrary." *Alexander v. Sharpe*, 245 A.2d at 288. A conviction of contempt should not rest on presumptions or inferences, nor on facts which did not occur in the presence of the court. *State v. Alexander*, 257 A.2d 778, 781 (Me.1969). The Court presumes that Pelletier's purpose "was to taunt, to test, to insult, and to demean the court and its authority." *Ante*, ¶ 5 (Court's opinion). Our prior jurisprudence has specifically and repeatedly stated that it is improper for a reviewing court to engage in presumptions and inferences. The Court suggests that Pelletier's response to the trial court's inquiry was "an obviously false response indicating further disrespect." *Ante*, ¶ 9 (Court's opinion). The trial court, however, made no such finding or conclusion. The law simply requires a trial court to explicitly include within its findings of fact the effect which an allegedly contemptuous act has on the court and its proceedings. This requirement is not onerous. *See In re Steinberger*, 387 A.2d 1121, 1123 (Me.1978) (affirming a summary conviction of contempt when the trial court found that offensive speech and tone of voice "were insulting to the Court and represented a challenge to the integrity of the Court"); *State v. Alexander*, 257 A.2d at 780 (affirming a summary conviction of contempt when the trial court wrote, "I found [the offensive language and conduct] contemptuous of the Court, degrading to the administration of justice and disrupting to the orderly procedure of the Court").

[¶ 21] The Court suggests confusion on the part of the parties. The Court is being generous. The parties' sole argument presented to us questioned the existence of courtroom disruption or disruption in the administration of justice. Neither Pelletier, the Attorney General, nor the Amicus argued that Pelletier's actions diminished the authority of the court. The Court

today makes that argument *sua sponte.* The Court bases its decision on presumptions and assumptions.

[¶ 22] Our prior jurisprudence has made it clear that our role is limited to a review of the trial court's written order. Contrary to the Court's assertions, its holding today actually weakens the trial court's authority. The Court's willingness to overlook our previous requirement that the trial court issue sufficient findings is an invitation for extensive appellate review of summary contempt proceedings. The Court's eagerness to review the entire record and to make its own findings rather than requiring the trial court to issue sufficient findings on its own will result in future summary contempt cases coming to this Court for what is essentially de novo review.

[¶ 23] It would not have been difficult for the trial court to have said either that Pelletier's actions disrupted the court's proceedings, or that his actions actually diminished the court's authority. The trial court did neither. Its order is deficient on its face.[8]

[¶ 24] I therefore would vacate the judgment of the District Court.

---

8. Although not raised by Pelletier, the Attorney General, or the Amicus, and not commented upon by the Court, I note that the trial court failed to follow the dictates of either M.R. Civ. P. 66 or M.R.Crim. P. 42 in a number of respects. Specifically, the trial court failed to "allow the alleged contemnor an opportunity to be heard in defense and mitigation" as required by both rules, and failed to "orally inform the alleged contemnor of the accusation of contempt and its basis" as required by M.R.Crim. P. 42.