JOSEPH W. HOUSTON, II, Petitioner, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF CLARK, and THE HONORABLE SANDRA L. POMRENZE, District Judge, Family Court Division, Respondents.

No. 46198

June 15, 2006

135 P.3d 1269

*Joseph W. Houston II*, Las Vegas, for Petitioner.

*George Chanos*, Attorney General, and *Daniel Wong*, Chief Solicitor General, Carson City; *David J. Roger*, District Attorney, Clark County, for Respondents.

## OPINION

*Per Curiam:*

In this petition, we are asked to interpret and apply NRS 22.030(1), governing summary contempt proceedings for direct contempt committed in a judge's presence. We conclude that a judge's oral contempt order is immediately effective and enforceable to punish the contempt but that a written order, setting forth the conduct constituting the contempt in detail, must thereafter be promptly entered.

### FACTS

Petitioner Joseph Houston represents Staci Lofton, who is the plaintiff in a divorce action. Robert Lofton, the defendant in the divorce action, represents himself in proper person. In the divorce case, Houston filed, on Staci's behalf, a motion for temporary spousal support and for an interim award of attorney fees, but he failed to attach an affidavit of financial condition for Staci, as required by Eighth Judicial District Court Rule 5.32(a). He still had not filed the document by the time the motion was heard. Robert also failed to file an affidavit of his financial condition, and he did not file a written opposition to Staci's motion.

At the hearing on Staci's motion, which took ten minutes, the following exchange, which resulted in the court's finding of contempt, occurred:

> THE COURT: We're here on Case Number D343177, Lofton v. Lofton. Counsel, please state your name and Bar Number for the record.
>
> MR. HOUSTON: Joe Houston for Staci Lofton, the plaintiff. Bar Number 1440.
>
> THE COURT: Okay. And I note that we have the defendant here in Proper Person.
>
> MR. LOFTON: Right.
>
> THE COURT: And guess what I'm missing?
>
> MR. HOUSTON: I don't need to guess.

THE COURT: In my file.

MR. HOUSTON: The summons had not been filed because we didn't receive it back from the process server. Here's the filed copy.

THE COURT: Okay, but here's what I also don't have. Shall I refer you to EDCR 5.32(a)?

MR. HOUSTON: Sure, why don't you read it to me for me.

THE COURT: You know what it says, Mr. Houston. Where's my Affidavit of Financial Condition?

MR. HOUSTON: I've given him a copy and I have a copy here, but we don't have it filed. I gave—

THE COURT: And the rules require that it accompany the motion, not that it come up later. The only time you can file it a little bit later is with an opposition, but when there's a motion, it's to be accompanied by an Affidavit of Financial Condition. An affidavit—an incomplete affidavit or the absence of the Affidavit of Financial Condition may be construed as an admission that the motion is not meritorious and is cause for its denial.

MR. HOUSTON: Right. May be.

THE COURT: I obviously don't want to put you in that position. I just want to put you on notice that you're going to have to get one to me. And what I have to do is probably continue this.

MR. HOUSTON: And that's fine.

THE COURT: I need the defendant's Affidavit of Financial Condition.

MR. HOUSTON: Actually, we can take a default on him because he hasn't responded and filed an opposition, but—we could have done a submission, but—

THE COURT: You could have. And you know what he can do right now? I'm not going to give him legal advice, but you know very well that he could go straight down to the Self-Help Center—

MR. HOUSTON: He should file an opposition. He should.

THE COURT: Well, no. He can go—he's already answered it, so you can't take a default against him.

MR. HOUSTON: On the motion. I mean a submission on the motion. We could have done a submission.

THE COURT: You can, but I still have to entertain the merits of the motion. And the problem I have with entertaining the merits of the motion is I don't know what the parties' re-

spective financial situation is. And sure—but Mr. Lofton is here. I know he got served, he showed up.

And Mr. Lofton, as you're sitting there smiling, feeling so smug, understand that until you—if you don't file an Affidavit of Financial Condition by the time we reconvene on this matter, I will take the plaintiff's representations as to your income and I'm going to order spousal support. And it's going to be retroactive. And I'm going to order attorney's fees, and it's going to be payable by you to Mr. Houston to pay for this divorce.

So, as you're sitting there very smugly, you might want to—

MR. LOFTON: No, I'm just—I just—honestly, I was just—

THE COURT: —reconsider.

MR. LOFTON: When you was telling me about the Self-Help Center, they've been very nice to me actually, so that's what I was actually smiling about.

THE COURT: From here on out when there's a motion filed, not only are you to submit a written opposition, but you are to include with it—

MR. HOUSTON: I can explain that to you, but I can't.

THE COURT: —an Affidavit of Financial Condition.

So, I have from you, Mr. Houston, no Affidavit of Financial Condition, and a blanket statement that the husband earns substantially more than the wife.

What?

MR. HOUSTON: We expected him to file his pleading; then we would have it. But he makes four thousand a month, we believe. The real issue here—

THE COURT: And what does the plaintiff make?

MR. HOUSTON: —to cut to the bottom thing, she's—

THE COURT: Wait, wait, wait. These parties have no child.

MR. HOUSTON: Right. The real issue here is that—the issue that was to be addressed today is really pretty simple, and maybe you could just hear it and talk to him—and still come back if we need to. But she owned a residence prior to this very short marriage, a few year marriage. The residence was refinanced during the marriage and a hundred thousand dollars was community debts that were paid off, which he would be responsible for paying a portion hereof. We are asking during the pendency of the action, until we can get to trial, that he pay half of the mortgage payments until we come then.

THE COURT: Who's living there?

MR. HOUSTON: She's living there.

THE COURT: What's his financial condition?

MR. HOUSTON: Twice what she makes, but—

THE COURT: Why?

MR. HOUSTON: Why? Because that's what it is.

THE COURT: I don't know what she makes. I don't have her financial statement.

MR. HOUSTON: Well, I'm just saying right now.

THE COURT: I'm not prepared to rule.

MR. HOUSTON: I understand. So let's get—

THE COURT: I don't have enough in front of me.

MR. HOUSTON: Let's get a date. I was just—I just was hoping—I just wanted him to understand that—

THE COURT: I think that the more I—the more I—

MR. HOUSTON: this money that was added to her mortgage is very likely to be a community debt that we could resolve.

THE COURT: The longer I beat attorneys on the head on this issue, and Pro Per parties as well, I'll actually start getting the Affidavits of Financial Condition that I'm supposed to.

MR. HOUSTON: No, you won't. No, you won't. Actually, you won't, because—

THE COURT: Maybe from you I will.

MR. HOUSTON: No, you won't.

THE COURT: Well, if you won't—

MR. HOUSTON: Because I don't do them. You gotta understand that. I—

THE COURT: Mr.—

MR. HOUSTON: You don't do the affidavits.

THE COURT: Mr. Houston—

MR. HOUSTON: Your clients do those.

THE COURT: —you're going to be responsible for submission.

MR. HOUSTON: I know. I know. You are. And there's no doubt about that. But you're missing the point. The point is is that attorneys don't prepare them.

THE COURT: Mr. Houston, I don't miss any points.

MR. HOUSTON: Okay.

THE COURT: I haven't missed any point you've made today.

MR. HOUSTON: The attorneys don't prepare those.

THE COURT: And Mr. Houston, I would be a little more judicious in how you address the Court.

MR. HOUSTON: On what?

THE COURT: I don't think it's exactly respectful for you to be telling me I'm missing a point.

MR. HOUSTON: No, I wasn't. I wasn't being disrespectful. I just said you missed the point.

THE COURT: Well, it came across as very much so.

MR. HOUSTON: Well—

THE COURT: So, you what—

MR. HOUSTON: —then that's the way you took it, not the way it was meant.

THE COURT: Stop. Mr. Houston, stop while you're ahead.

MR. HOUSTON: I'm responding to your questions.

THE COURT: Sit down.

MR. HOUSTON: No, I'm responding to your questions.

THE COURT: Mr. Houston, sit down.

MR. HOUSTON: No. (Mr. Houston sits down.) Oh, God.

THE COURT: What was that?

MR. HOUSTON: Okay, I sat down.

THE COURT: Okay.

MR. HOUSTON: Okay.

THE COURT: The next time I get that from you—

MR. HOUSTON: You're the powerful judge.

THE COURT: You're pushing the envelope, Mr. Houston. I got Stefan over there—

MR. HOUSTON: Okay. I see him. Do what you gotta do.

THE COURT: What are making a—

MR. HOUSTON: You made the big deal out of this, not me.

THE COURT: Okay.

MR. HOUSTON: I just simply said you missed the point. I meant you missed the point.

THE COURT: Mr. Houston, I'm not going to entertain this kind of conduct in my courtroom.

MR. HOUSTON: Okay, then fine. Give us a new date and we'll come back. That's all I want.

THE COURT: Okay. But in the meantime, you're going to pay five hundred dollars to the Clark County Law Library fund.

MR. HOUSTON: For what?

THE COURT: You're sanctioned.

MR. HOUSTON: For what?

THE COURT: For disrespect for the Court.

MR. HOUSTON: Then I want a hearing on that contempt. You have no right to do that. I have not been contemptful.

THE COURT: I actually find that to be direct contempt, and I can sanction it without a hearing. It's sanctioned. You are sanctioned five hundred dollars. It's payable within thirty days from today's date. Bring a receipt to prove that you made the payment.

Now let's get the new date.

MR. HOUSTON: I want an order prepared by the Court then, so that I can appeal that to the Supreme Court.

THE COURT: You want an order prepared?

MR. HOUSTON: Yes.

THE COURT: You're making demands. You're keeping it up.

MR. HOUSTON: I want an order prepared that I can appeal from to the Supreme Court, then, if that's your ruling.

THE COURT: Okay, let's do it. Go ahead and appeal that.

MR. HOUSTON: Okay, let's do it.

THE COURT: Have at it. But if you engage in that conduct again, I may just stick you in a holding cell for awhile to cool down. Because I won't—I will not—maybe other judges will take that kind of antics in the courtroom, I will not.

MR. HOUSTON: There was no antics, Judge. You misunderstood something I said, I simply pointed out. You took it as a rude remark. It was not a rude remark. It was never meant to be a rude remark. You took it that way. You got all defensive. I can't help it if you have some psychological thing that made you all defensive. I didn't mean it rude.

THE COURT: Stefan, pull out the cuffs.

MR. HOUSTON: I did not mean it rude. I'm sorry.

THE COURT: Now, now—

MR. HOUSTON: I didn't mean it rude.

THE COURT: —now Mr. Houston is questioning my psychological state.

MR. HOUSTON: I am not. I'm just saying you took it wrong.

THE COURT: You just did. You better look at the tape. Mr. Houston—

Stefan, get out the handcuffs. He's in a holding cell for the rest of the day. And—but before we do that, he gets a new date.

THE CLERK: Thirty days, Judge?

THE COURT: Thirty days.

THE CLERK: November 9th at 9:30.

MR. LOFTON: I got a—Judge, I got a question.

THE COURT: No. Mr. Lofton, I suggest you remain silent as well.

MR. HOUSTON: I can't be here at 9:30 on that date. I have a criminal case that morning at 9:00 that's likely to go, so I would request another hearing—another time.

THE CLERK: November 15th at 10:00.

MR. HOUSTON: I'm sorry. I mean, and I don't have that many. I have a Henderson—Can we do it just later on the 9th, cause—in the after—you don't do afternoon. How about the morning of the 8th? I'm in Family Court on the 8th. I'm in Family Court on the 14th, the 16th.

THE CLERK: The 16th at 9:30?

MR. HOUSTON: That would be fine.

MR. LOFTON: What was that?

THE CLERK: November 16th at 9:30.

THE BAILIFF: Are we done with the hearing, Judge?

THE COURT: Um-hmm.

Houston's petition does not indicate that he spent the rest of the afternoon in a holding cell, so it appears that he was not actually taken into custody. Rather, the $500 fine was the extent of punishment imposed.

As Houston requested, the judge entered a written order. The order states:

On October 5, 2005, a hearing was held in this case with the Plaintiff being present and represented by her attorney, Joseph W. Houston, Jr., and the Defendant being present in proper person. After inappropriate remarks by attorney Houston and an admonishment by the Court, and further disparaging comments by attorney Houston, it is

ORDERED that attorney, Joseph W. Houston, Jr., is sanctioned $500.00 for his disrespectful conduct towards the Court in direct contempt thereof, such sum to be paid within thirty (30) days from October 5, 2005 to the Clark County Law Library, and a copy of the receipt submitted to the Court no later than said date.

This writ petition followed. Under this court's direction, the district judge filed an answer, which includes a copy of the hearing transcript.

## DISCUSSION

NRS 22.030(1) governs summary punishment for direct contempt:

> If a contempt is committed in the immediate view and presence of the court or judge at chambers, the contempt may be punished summarily. If the court or judge summarily punishes a person for a contempt pursuant to this subsection, the court or judge shall enter an order that:
>
> (a) Recites the facts constituting the contempt in the immediate view and presence of the court or judge;
>
> (b) Finds the person guilty of the contempt; and
>
> (c) Prescribes the punishment for the contempt.

Two phrases from this statute are at issue in this petition, and so we must determine how to apply the requirements that ''the court or judge shall enter an order,'' which ''[r]ecites the facts constituting the contempt.''

### Requirement of a written order

The district court makes a plain language argument that ''summary'' means ''without delay or formality; quickly executed,'' and thus no written order is required so long as the contemnor is aware of the facts constituting the contempt. The district court argues that an oral order is sufficient, relying on language in this court's recent opinion in *State, Division of Child & Family Services v. District Court.*[1] In that case, we considered when a district court's oral order must be written, signed and filed before becoming effective and noted that ''nothing in this opinion precludes a court from summarily punishing a party who commits contempt in the court's immediate presence, pursuant to NRS 22.030.''[2] In contrast, Houston implicitly contends that a written order must be entered.

Resolution of this issue hinges on the meaning of the phrase ''the court or judge shall enter an order.'' We have previously stated that ''[t]his court gives effect to the legislature's intent by looking first to the plain language of the statute. But if the statutory language is ambiguous or fails to address the issue, this court construes the statute according to that which 'reason and public policy would indicate the legislature intended.' ''[3] Here, the phrase ''enter an order'' could mean entry of a written order, or it could

---

[1]120 Nev. 445, 92 P.3d 1239 (2004).

[2]*Id.* at 454, 92 P.3d at 1245.

[3]*Clark County v. Sun State Properties*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003) (footnote omitted) (quoting *State, Dep't Mtr. Vehicles v. Vezeris*, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).

mean entry of the court clerk's minutes of the district court's oral decision. Thus, the phrase is ambiguous.

■■■■■■

The first sentence of NRS 22.030(1) states that a contempt committed in the court's presence may be punished summarily, and the second sentence provides that if a court summarily punishes a contempt, then it must enter an order that memorializes the grounds for contempt, the contemnor's guilt, and the punishment imposed. Under NRCP 58(c), only written judgments are "entered"—signed by the judge and filed with the clerk. While a contempt order is not a "judgment" as defined in NRCP 54(a), since no appeal may be taken from a contempt order, NRCP 58(c)'s language is still instructive and implies that an "entered" order must be in writing. The statute's structure and language thus indicate that the court's verbal order is enforceable to punish the contempt and restore order, but that a written follow-up order must nevertheless be entered.

This interpretation comports with common sense and the purpose of summary direct contempt. When faced with disruptive, contemptuous conduct during court proceedings, a judge must have the power to restore order immediately by issuing a verbal contempt order. It would be absurd to read the statute to require that, before the judge could enforce order in the courtroom, the judge must briefly recess the proceedings to prepare a written order. But a written order nevertheless serves valuable purposes: it facilitates our review, and it helps to ensure that the district court's contempt power is used with care and circumspection. We therefore conclude that while the district court's verbal contempt order is immediately enforceable, a written order including the statute's required elements must promptly be entered.

## Degree of specificity required in fact recitation

NRS 22.030(1)(a) requires that the written order must "[r]ecite[ ] the facts constituting the contempt." The statute does not state how specific the factual recitation must be. The phrase could mean that a detailed description of the accused contemnor's conduct must be set forth, or it could be interpreted to permit a general summary of the contemptuous conduct. We must determine which meaning best reflects the Legislature's intent.

Relying on cases from other jurisdictions, Houston argues that the instant contempt order does not meet the required standard of detail. In particular, Houston cites a Missouri case, which holds that a contempt order must include sufficient specific facts so that a reviewing court can determine from the face of the order whether a contempt has been committed and that bare conclusions are in-

sufficient.[4] The district court asserts that if the facts constituting contempt appear in the record and are known to the contemnor, then NRS 22.030(1)(a) is satisfied. But the district court cites no authority in support of its position.

Contrary to the district court's assertion, a majority of jurisdictions require that the basis for contempt be set forth in detail in the written order.[5] Also, the governing federal rule, which has language similar to NRS 22.030, has been interpreted to require specific facts set forth in the written certificate of contempt.[6] These jurisdictions reason that appellate review is simplified by requiring the written order to be specific,[7] that a clear written order avoids compelling the appellate court to infer from a transcript the contempt's basis,[8] and that requiring a specific written order furthers the goal of ensuring that the contempt power is used appropriately.[9] Some of these cases have held that statutes or rules similar to NRS 22.030 require specific facts, not conclusory characterizations, in the written order in situations similar to that presented in this case.[10]

---

[4]*State ex rel. Tannenbaum v. Clark*, 838 S.W.2d 26 (Mo. Ct. App. 1992). Petitioner also cites *Gallagher v. Municipal Court of City of Los Angeles*, 192 P.2d 905 (Cal. 1948) and *People v. Griffith*, 620 N.E.2d 1138 (Ill. App. Ct. 1993), but Illinois permits review of the complete record, rather than requiring the written order to stand alone. *See People v. Bell*, 658 N.E.2d 1372 (Ill. App. Ct. 1995).

[5]*See In re D.W.*, 20 Cal. Rptr. 3d 274 (Ct. App. 2004); *In re Marriage of McGinnis*, 778 P.2d 281 (Colo. Ct. App. 1989); *Matter of Butler*, 609 A.2d 1080 (Del. 1992); *Williams v. U.S.*, 576 A.2d 1339 (D.C. 1990); *Guardado v. Guardado*, 813 So. 2d 236 (Fla. Dist. Ct. App. 2002); *State v. Hicks*, 798 P.2d 906 (Haw. 1990); *Matter of Williams*, 817 P.2d 139 (Idaho 1991); *Matter of Steelman*, 648 N.E.2d 366 (Ind. Ct. App. 1995); *Hudson v. Jenkins*, 288 N.W.2d 566 (Iowa 1980); *State v. Williams*, 11 P.3d 1187 (Kan. Ct. App. 2000); *State v. Pelletier*, 786 A.2d 609 (Me. 2001); *Hermina v. Baltimore Life*, 739 A.2d 893 (Md. Ct. Spec. App. 1999); *Com. v. Segal*, 514 N.E.2d 1082 (Mass. 1987); *Hentz v. State*, 496 So. 2d 668 (Miss. 1986); *Tannenbaum*, 838 S.W.2d 26 (Missouri appellate case); *State ex rel. Smith v. District Court*, 677 P.2d 589 (Mont. 1984); *State v. Harker*, 600 N.W.2d 488 (Neb. Ct. App. 1999); *Town of Nottingham v. Cedar Waters, Inc.*, 385 A.2d 851 (N.H. 1978); *State v. Quintana*, 637 A.2d 969 (N.J. Super. Ct. App. Div. 1994); *O'Connell v. Taddeo*, 662 N.Y.S.2d 722 (Sup. Ct. 1997); *State v. Treon*, 188 N.E.2d 308 (Ohio Ct. App. 1963), *cited in In re Contemnor Caron*, 744 N.E.2d 787 (Ohio C.P. 2000); *State v. Parks*, 750 P.2d 526 (Or. Ct. App. 1988); *State v. Barlow*, 771 P.2d 662 (Utah Ct. App. 1989); *Badley v. City of Sheridan*, 440 P.2d 516 (Wyo. 1968).

[6]*See, e.g.*, *United States v. Schrimsher*, 493 F.2d 842 (5th Cir. 1974).

[7]*Smith*, 677 P.2d at 590.

[8]*Pelletier*, 786 A.2d at 613.

[9]*Guardado*, 813 So. 2d at 237.

[10]*See, e.g.*, *Schrimsher*, 493 F.2d 842 (citing Fed. R. Crim. P. 42(a)); *Guardado*, 813 So. 2d 236 (citing Fla. R. Crim. P. 3.830 (1999)); *Williams*, 11 P.3d 1187 (citing Kan. Stat. Ann. § 20-1203 (2004)).

Although a minority of jurisdictions holds that a contempt finding will be upheld so long as the record contains sufficient information demonstrating the contempt,[11] we are convinced that the majority view concerning the required degree of specificity adheres to the Legislature's intent. This case illustrates precisely why a detailed written order would be helpful. The order entered here does not indicate what particular comments by petitioner were held to be contemptuous, and it is not clear from the transcript which comments or actions the district judge intended to sanction. Also, the transcript does not include any nonverbal conduct that may have impacted the district court's contempt finding, such as body language, tone of voice, or volume. Thus, a written summary contempt order must set forth specific facts concerning the conduct found to be contemptuous. The written order entered here does not meet this standard.

*Appropriate remedy*

Here, the district court entered a written order, but it did not contain a sufficient statement concerning what conduct was held to be contemptuous. Houston asserts that the order is therefore void. The district court asks that it be permitted to enter an amended order. We conclude that since this opinion addresses an issue of first impression, the district court here should have the opportunity to enter an amended order that satisfies the standard announced today.

## CONCLUSION

NRS 22.030(1) provides that the district court's oral order is enforceable, but that a written order must be entered. The written order must contain a specific description of the conduct held to be contemptuous.

Accordingly, we grant the petition in part. We direct the court clerk to issue a writ of mandamus directing the district court to enter an amended contempt order, describing petitioner's conduct that was found to be contemptuous.

---

[11]*See Smith v. Smith*, 365 So. 2d 88 (Ala. Civ. App. 1978); *Weiss v. Superior Court of Pima County*, 480 P.2d 3 (Ariz. 1971); *Widmer v. State*, 422 S.W.2d 881 (Ark. 1968); *In re Dodson*, 572 A.2d 328 (Conn. 1990); *In re Orenstein*, 593 S.E.2d 690 (Ga. Ct. App. 2004); *Bell*, 658 N.E.2d 1372 (Illinois appellate decision); *Garrett v. Andrews*, 767 So. 2d 941 (La. Ct. App. 2000); *In re Henry*, 119 N.W.2d 671 (Mich. 1963); *State v. Bevilacqua*, 447 S.E.2d 213 (S.C. Ct. App. 1994); *State v. Hobble*, 892 P.2d 85 (Wash. 1995); *Moore v. Kitsap County Superior Court,* 610 P.2d 927 (Wash. Ct. App. 1980).