OPINION
By the Court, Rose, J.:
This petition presents a question of first impression: Whether an indigent defendant in family court is entitled to appointed counsel in a contempt hearing when the hearing may result in the imposition of a jail sentence for the nonpayment of child support.
Charles Rodriguez, petitioner, and Nicole Eddowes, the real party in interest, were divorced on November 6, 2001. The terms of the initial custody order and divorce decree awarded primary physical custody of the couple’s only child to Eddowes and ordered Rodriguez to pay child support, along with one-half of the child’s insurance premiums, and one-half of any unreimbursed medical expenses incurred on the child’s behalf.
Rodriguez failed to make the payments as required, and on March 1, 2004, the district court found Rodriguez in contempt of court for the nonpayment of child support and ordered him to serve 25 days in jail, with the possibility of early release upon payment of $10,000 of the outstanding arrearages. Rodriguez then filed this petition for a writ of habeas corpus, challenging the district court’s order rejecting his request for the appointment of counsel and finding him in contempt of court.
We conclude that while a defendant in a contempt proceeding before the family court does indeed have an important liberty interest at stake, that interest is not so compelling as to require the appointment of counsel, nor is it on par with the personal liberty interests at issue in a criminal prosecution or criminal contempt hearing to warrant the right to appointed counsel in every case. We adopt a discretionary rule involving the nonpayment of support cases whereby the district court may appoint counsel to assist an indigent defendant when the circumstances so warrant. Consequently, we grant the petition in part. Rodriguez shall remain free from confinement until the district court makes the required findings and determinations of indigency and contempt in accord with this decision.

*802
FACTS

Rodriguez and Eddowes were divorced on November 6, 2001.[1] The terms of the divorce decree awarded Eddowes primary physical custody of the couple’s child and ordered Rodriguez to pay child support, one-half of the insurance premiums for the child, and one-half of any unreimbursed medical expenses incurred on the child’s behalf.
In explaining its decision in the divorce, the district court found that Rodriguez was unemployed and underemployed because of a unilateral desire to educate himself and assist in his divorce and custody proceedings. Noting that Rodriguez’s actions thus far did not appear to be taken for the purpose of avoiding child support, the court warned that any future noncompliance with subsequent court orders would be considered an attempt to avoid child support and sanctions could be imposed accordingly. The district court determined that Rodriguez had the ability to generate income of at least $2,000 per month and observed that it fully expected Rodriguez to earn an even greater income based upon his representations and the testimony of witnesses, regarding the business awarded to him in the divorce.
Rodriguez filed an ex parte motion for leave to proceed in forma pauperis on his appeal from the divorce decree. On February 17, 2002, the district court denied the motion, finding Rodriguez’s claim of financial inability disingenuous and made in bad faith. The district court noted that, even without considering other outside employment, Rodriguez possessed a considerable source of income through the operation or sale of the business awarded to him in the divorce. Noting that it had previously found Rodriguez willfully unemployed, but for purposes other than the avoidance of child support, the court determined that his failure to work for the three months following the trial was due to his conscious insistence to remain unemployed. Therefore, because Rodriguez was fully capable of meeting his obligations, the court denied his request.
On two subsequent occasions, the district court held Rodriguez in contempt- of court for the nonpayment of child support and for failing to obey the court’s order requiring him to pay his share of the child’s medical expenses.[2] On each occasion, Rodriguez asserted that he was entitled to an attorney because of the possibility that he would be found in contempt and sentenced to jail. Rodriguez claimed that he was unemployed and unable to meet his *803 obligations because of the time required to research and appeal the child custody order issued in this case and another case involving his other child. Rodriguez insisted that he was not willfully refusing to pay child support and argued that his daughter was not injured by his actions because his nonpayment was the direct result of his efforts to get custody of her.
At one point, Rodriguez requested a continuance because he was not prepared to go forward, as he had just returned from a vacation with his daughter at Disneyland. The court inquired as to where Rodriguez got the money to go to Disneyland, and he stated that his mother paid for the vacation. The court asked whether Rodriguez had made any child support payments, and he responded that he had borrowed $100 to make a partial payment following the first contempt order. The court found that Rodriguez had made a conscious choice to be unemployed to pursue his appeal, which the court did not accept as a justifiable excuse for his nonpayment. Additionally, the court denied Rodriguez’s request for appointed counsel, observing that the court’s proceedings were civil and not criminal. Given the court’s belief that the facts of the case spoke for themselves, the court did not concur with Rodriguez’s assertion that an attorney was necessary to represent him. The court specifically admonished Rodriguez to make an effort to secure a job that would generate a salary and enable him to meet his court ordered child support obligation.
Rodriguez ultimately filed an affidavit of indigency and a motion to reduce the child support award. Eddowes opposed the motion and filed a countermotion for contempt. Rodriguez filed an affidavit of indigency on February 13, 2004. At a hearing on February 17, 2004, Rodriguez requested to withdraw his motion to reduce child support until he retained counsel. The district court noted that because this court had affirmed the decree of divorce, other issues were moot; however, at the request of Eddowes’ counsel, the court decided to proceed with Eddowes’ countermotion for contempt.
Rodriguez again argued that as an indigent person he had the right to appointed counsel because his liberty interest was on the line. Rodriguez acknowledged that no Nevada statute provides for such a right, but maintained that other courts dealing with the issue have concluded that there is such a right to counsel. Despite Rodriguez’s arguments, the court denied his request for counsel and proceeded with the contempt hearing. However, the court instructed Eddowes that she must file a motion to show cause before the court could hear the matter.
On March 1, 2004, the court heard Eddowes’ motion to show cause. Eddowes informed the court that since October 2002, Rodriguez had been paying less than one-third of the monthly child support ordered. Rodriguez stated that he had the right to an *804 attorney, he could not afford an attorney, and he was not qualified to represent himself. Rodriguez insisted that without an attorney he could not get a fair hearing and that the district court and this court had continued to discriminate against him. The court inquired whether Rodriguez was employed and why he had not paid his support obligation. Insisting that he was indigent, Rodriguez refused to answer the court’s questions without the presence of counsel.
The court observed that Rodriguez had presented no evidence to demonstrate that his unemployment was involuntary, as he was physically able to work but refused to obtain a job. The court noted that Rodriguez’s voluntary choice to pursue his appeal of the custody award and child support order did not eradicate his duty to pay child support. The district court once again found Rodriguez in contempt of court for failing to pay child support and this time ordered him to serve 25 days in jail, with early release if he paid $10,000 of the more than $18,000 outstanding in arrears. Once again, the court directed Rodriguez to make all reasonable efforts to obtain employment, either through self-employment in the business awarded to him in the divorce or regular employment.
Thereafter, Rodriguez filed this original petition for a writ of habeas corpus challenging the district court order holding him in contempt and ordering him to serve 25 days in jail, with the possibility of early release upon his payment of $10,000 of the outstanding arrearages. We ordered a temporary stay of the district court’s contempt order and Rodriguez’s release from custody pending our review of the matter.

DISCUSSION

Rodriguez argues that his incarceration without the assistance of court-appointed counsel violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 8(5) of the Nevada Constitution. This being an issue of first impression, we feel it is important to set forth the legal principles upon which our reasoning relies.

Sixth Amendment right to counsel

At the outset, we note that the Sixth Amendment guarantee of the right to counsel applies only in criminal prosecutions.[3] Whether a contempt proceeding is classified as criminal or civil in nature depends on whether it is directed to punish the contemnor or, instead, coerce his compliance with a court directive.[4] Criminal sanctions *805 are punitive in that they serve the purpose of preserving the dignity and authority of the court by punishing a party for offensive behavior.[5] In contrast, civil contempt is said to be remedial in nature, as the sanctions are intended to benefit a party by coercing or compelling the contemnor’s future compliance, not punishing them for past bad acts.[6] Moreover, a civil contempt order is indeterminate or conditional; the contemnor’s compliance is all that is sought and with that compliance comes the termination of any sanctions imposed.[7] Criminal sanctions, on the other hand, are unconditional or determinate, intended as punishment for a party’s past disobedience, with the contemnor’s future compliance having no effect on the duration of the sentence imposed.[8]
The contempt order issued in the present case is civil. The district court’s intent was to compel Rodriguez’s compliance with the support order for the benefit of his daughter, not to punish him for any ongoing noncompliance.[9] Consequently, the Sixth Amendment right to counsel is inapplicable.

The determination of indigency

Determining that the proceedings in this case are civil and not criminal does not fully resolve the underlying issue of whether an indigent defendant threatened with incarceration must be appointed counsel in every case. The threshold question is whether a finding of purposeful underemployment is an appropriate basis to defeat a petitioner’s claim of indigency.
Determining whether a particular party meets the standard for indigency is a fact-intensive inquiry.[10] The initial burden of establishing indigency rests with the petitioner,[11] who must demonstrate *806 not that he is entirely destitute and without funds, but that payments for counsel would place an undue hardship on his ability to provide the basic necessities of life for himself and his family.[12]
Under Nevada criminal procedure, a criminal defendant may request the appointment of counsel by submitting an affidavit of in-digency.[13] Under NRS 171.188(3), when such a request is made, the judge must consider the application and may, after making further inquiry as necessary, appoint counsel if he or she “(a) [fjinds that the defendant is without means of employing an attorney; and (b) [o]therwise determines that representation is required.”[14] That statute, however, applies in criminal cases, and as we have already noted, the contempt hearing in this case was civil, not criminal in nature.
In the context of civil litigation, the general rule is that courts look to a party’s current financial status, including the party’s income, property, and other resources, to determine that party’s present ability or, more importantly, inability to prosecute or defend an action.[15] When considering an indigency application, a trial judge must consider a party’s complete financial picture, balancing income and assets against debts and liabilities, taking into account the cost of a party’s basic needs and living expenses.[16] Particularly relevant to this inquiry are (1) the party’s employment status and income, including income from government sources such as social security and unemployment benefits,[17] (2) the ownership of any unencumbered assets, including real or personal property and monies on deposit,[18] and finally, (3) the party’s total indebtedness and any *807 financial assistance received from family or close friends.[19] Additionally, when confronted with a party who is willfully underemployed, especially for purposes of avoiding court ordered support payments, additional inquiry is required. In such a case, it is prudent for the court to consider the employability of the nonpaying party and what his or her ability to pay would be if employment were pursued and obtained.[20] We note that while the determination of a party’s indigency status is generally within the trial court’s sound discretion and, therefore, entitled to great deference on review, it is also subject to careful scrutiny when it involves the protection of basic constitutional rights.[21]
Here, Rodriguez filed an affidavit of indigency pursuant to NRS 171.188 of Nevada’s criminal procedure code, outlining his current financial status and attesting to the fact that he is without means to employ an attorney. In the affidavit, Rodriguez notes that he does not own an interest in any real estate or personal property of any value. He states that while he has borrowed money from his mother, she “has no more money to loan [him] to obtain counsel,” and that he is not receiving assistance from any government agencies at this time.
Although the district court made summary findings that Rodriguez was underemployed, the court did not make specific findings regarding indigency and his potential ability to pay. The court referenced the business awarded to Rodriguez in the divorce, but made no specific findings concerning the type and value of the business or what Rodriguez has done with the business to this *808 point. In addition, the district court made passing reference to Rodriguez’s living arrangement and the level of support received from his mother, but made no specific factual findings of indigency. In this case, the district court should fully examine the facts underlying its conclusion that petitioner is underemployed and determine whether he is indigent given the relevant factors above.

Due process right to appointed counsel

Rodriguez contends that notwithstanding the indigency determination, due process requires that counsel be appointed for the contempt hearing because he faced the threat of potential confinement, which became the actual result. To address this contention and provide guidance for the district court, we consider the remaining issues raised by Rodriguez. Although we already concluded that these particular proceedings are civil, because Rodriguez faced the threat of imprisonment, the fundamental requirements of due process must also be met.[22]
A number of courts have addressed the issue of whether due process requires the appointment of counsel for an indigent party in a contempt proceeding involving the nonpayment of child support that may result in a jail sentence.[23] Three divergent positions emerge: (1) an absolute right to appointed counsel for indigent parties, (2) no right to appointed counsel, and (3) the discretionary appointment of counsel on a case-by-case basis.
Courts taking the view urged by Rodriguez, that any deprivation of liberty as the result of a contempt proceeding requires the appointment of counsel, eschew the distinction between civil and criminal contempt, instead relying on the determination of indi-gency as the critical factor in the analysis.[24]
In Walker v. McLain, the Tenth Circuit Court of Appeals, relying on Lassiter v. Department of Social Services,[25] held that due process requires the appointment of counsel in a nonsupport hearing where a party threatened with incarceration can establish indi- *809 gency under the standards applicable in a criminal case.[26] The court opined that the right to counsel should not turn on whether the proceeding is characterized as criminal or civil but, rather, whether the proceeding may result in a deprivation of the defendant’s physical liberty.[27] Thus, because the court focused its inquiry on the petitioner’s alleged indigency and his inability to meet his support obligations, it concluded that the trial court’s “failure to warn him of his right to appointed counsel’ ’ was dispositive.[28]
State courts following this line of reasoning discount the argument that the contemnor holds the keys to the jailhouse door because, as they see it, the existence of a “purge clause” does not diminish the liberty interests at stake when an indigent defendant is unable to pay the arrearages to procure his release.[29] For these courts, the risk that an indigent defendant could be jailed erroneously if not provided with counsel outweighs the government’s interests because other viable alternative means exist to compel compliance with a child support order. The proffered examples include income withholding, federal and state tax intercept, establishing a lien against real and personal property, and requiring a hearing before a referee.[30]
However, the Supreme Court of Florida in Andrews v. Walton[31] found this reasoning unpersuasive, and we tend to agree. As that court noted, consistent with due process, a party cannot be found guilty of failing to pay child support and sentenced to jail conditional upon his payment of arrearages unless the trial court first determines that the individual (1) has the ability to make the payment and (2) willfully refuses to pay.[32] The Florida court noted that when these requirements are met, an indigent party cannot be imprisoned because, “upon a showing of indigency, the trial court cannot make the essential finding that the indigent parent has the ability to pay.”[33] Thus, the court held that a parent is never entitled *810 to court-appointed counsel in nonsupport proceedings “because if the parent has the ability to pay, there is no indigency, and if the parent is indigent, there is no threat of imprisonment.’ ’[34]
However compelling the straightforward analysis of Andrews may be, it fails to recognize that in certain instances, the intricacies of the law or complexities of a case may warrant the appointment of counsel. Under due process considerations, we must assess to what extent representation by appointed counsel is required to ensure a fundamentally fair contempt hearing.
The United States Supreme Court in Lassiter recognized that an indigent party’s right to counsel depends initially on whether that party will lose his physical liberty if he loses the litigation.[35] After noting that “as a litigant’s interest in personal liberty diminishes, so does his right to appointed counsel,” the Court, relying on Mathews v. Eldridge, applied a three-part balancing test to determine whether the interests of due process have been met.[36] This test requires a review of “the private interests at stake, the government’s interest, and the risk that the procedures used will lead to erroneous decisions.”[37] After balancing each of these elements against the other, they as a whole are measured against the presumption that a right to appointed counsel arises only when the indigent party may lose his personal freedom.[38]
Relying on Lassiter, the Supreme Court of New Mexico in State ex rel. Department of Human Services v. Rael, held that due process does not require the appointment of counsel every time an indigent party faces the possibility of imprisonment for civil contempt due to the nonpayment of child support.[39] The court opined *811 that the trial court is the proper forum to determine the need for counsel, taking into account relevant factors such as the party’s ability to understand the proceeding, the complexity of the issues, and the defenses that might be presented.[40] The court adopted a case-by-case analysis, providing the trial court with discretion to determine whether fundamental fairness requires the appointment of counsel in any given case.[41] We believe, consistent with Lassiter, that this case-by-case approach is the best rule of law.

A. The private interests at stake

1
While a contemnor’s private liberty interest in personal freedom is indeed an important interest to consider, it is not on par with that of the accused in a criminal prosecution. In the setting of a contempt hearing for the nonpayment of child support, a party loses his personal freedom only after the court determines that he has the ability to comply with the child support order but failed to make an effort to do so.[42] While it very well may be true that an indigent party in a nonsupport hearing cannot be said to hold the keys to his salvation, this does not mean that the liberty interests at stake mirror those of a criminal defendant. The real issue before the trial court is not the contemnor’s ability to comply, but his unwillingness to do so.
The facts of this case demonstrate quite strikingly why this is true. The district court found Rodriguez in contempt not because of any inability to pay, but in contrast, because of his willful refusal to do so. At the time it entered the divorce decree, the district court determined that Rodriguez possessed the ability to generate income, either through the business awarded to him in the divorce or other outside employment. Rodriguez argues that he is indigent not because of any inability to secure employment but, instead, because of the considerable time he devoted to appealing the child custody orders for his two children.[43] Finding his arguments unpersuasive, the district court declared Rodriguez willfully underemployed. The trial court admonished Rodriguez to seek employment and begin paying on his obligations. It was because of his unwillingness to comply that the court elected to employ more coercive measures.
*812 [120 Nev.
To allow a party’s willful unemployment to require appointment of counsel would reward that party for electing indigency to the detriment of his own child. We do not believe that is what the Supreme Court meant when it recognized fundamental fairness as one of the cornerstones to due process.[44]

B. Governmental interests at issue

The State’s interest, while primarily based on the welfare of the child, is to ensure that child support orders are enforced as economically and efficiently as possible. The added cost of appointed counsel and lengthened time required for formal litigation run counter to the State’s interest.[45] In addition, the purpose of child support is simply to try to prevent the child from experiencing the effects of poverty and becoming a charge of the state. Thus, the State has a strong interest in ensuring that support orders are enforced through informal procedures and that the parties under its jurisdiction obey the orders of family courts as issued.
C. Risk of erroneous decisions
Each of the parties involved in a contempt hearing for the nonpayment of child support has an important interest in the accuracy of the court’s determination as to whether the defendant complied with the court’s initial support order.[46] The State has an interest in seeking enforcement, and the contemnor has an interest in ensuring, in the case of payments actually made, that all transactions are properly accounted for at the hearing. However, the legal and factual issues in a nonsupport hearing are rarely complex. The only issue before the court is a determination of whether a valid support order remains in force and, more importantly, whether the defendant, if capable of making the payments, willfully failed to comply.[47] Thus, the facts are normally determined by reference to court documents, accurate record keeping, and simple accounting.
*813 On balance, these factors demonstrate that fundamental fairness does not require the appointment of counsel in every nonsupport contempt hearing when a party faces incarceration. In contrast, it would be the exception, not the rule, for a case to present such legal and factual complexities so as to require the aid of counsel. In only the rarest of cases would a party be unable to comprehend the nature of court ordered child support, or not understand the proceedings and why he or she is before the court on a charge of contempt. Unless they are wholly incapable of determining whether the court ordered support remains in effect, rarely would defenses amount to more than marshaling the financial facts of whether he or she has made the required payments and conducting simple bookkeeping. Moreover, the personal liberty interests at stake in a civil contempt hearing are diminished because in most cases, the contemnor holds the keys to his freedom through willful compliance. The deprivation of that interest is equally surpassed by the interests of the State and those of the adverse party in seeing that the court’s child support order is obeyed. The risk of erroneous findings is not generally of such magnitude that the addition of counsel would significantly improve the court’s fact-finding function.
Due process does not require the appointment of counsel in every civil contempt hearing involving an indigent party facing the threat of imprisonment. Instead, the trial court is the proper evaluator of the need for counsel on a case-by-case basis. The need for appointed counsel turns on an initial determination of indigency, for unless a party is truly indigent, the state need not provide representation. If an indigent party faces the threat of possible incarceration for the nonpayment of child support, the court should then seek to balance the private liberty interest at stake, the government’s interest, and the risk of an erroneous finding, taking into account the complexity of the legal and factual issues and the party’s ability to effectively communicate on his own behalf. By this, we do not mean to imply that appointment of counsel is inappropriate in every nonsupport hearing. Surely, a case may arise that requires appointed counsel to ensure that the defendant understands the law and has a fundamentally fair opportunity to present a defense.

The order of contempt

Because Rodriguez apparently elects not to seek employment, the State possesses a limited set of available options to compel his compliance. The alternative means of coercion noted above could *814 have little effect in this case. Rodriguez willfully elects not to produce income. Without income there is nothing to withhold, no federal income tax to intercept, and establishing a lien against an individual’s real or personal property is of little consequence where that party elects to have none. The district court sentenced Rodriguez to serve 25 days in jail with the possibility of early release upon his payment of a portion of the support payments in arrears. While we express no opinion on the $10,000 figure selected by the district court, we note that without specific findings regarding Rodriguez’s current financial status, or the status of the business awarded to him in the divorce, we are concerned whether Rodriguez actually possesses the ability to secure his freedom. As previously noted, this is an important distinction between civil and criminal contempt. Assuming the district court, after making proper findings, selects an appropriate figure for Rodriguez to pay to purge his contempt, the liberty interest at stake is diminished because Rodriguez in fact, is in control of his own destiny. Moreover, the legal and factual circumstances presented are not complex. Rodriguez appears to be able to marshal the facts and present his position to the court.
Accordingly, we grant the petition in part and direct the clerk of this court to issue a writ of habeas corpus instructing the district court to make specific findings concerning Rodriguez’s indigency, to hold a further hearing if necessary, and thereafter to determine whether Rodriguez is in contempt of court, the penalty for such contempt, and the amount that will be necessary to purge that contempt. Rodriguez shall remain free from custody until these determinations are made. The remaining relief requested by Rodriguez is denied.
Maupin and Douglas, JJ., concur.

The petition for divorce appears to have been filed in My 1999.

The first contempt order, issued June 4, 2002, placed Rodriguez in jail for 20 days with the possibility of his early release upon the payment of $8,000 of the outstanding arrearages. The second order, issued August 19, 2002, was for 25 days, again with early release, this time upon payment of $9,200 of the outstanding amount.

Argersinger v. Hamlin, 407 U.S. 25 (1972).

Matter of Water Rights of Humboldt River, 118 Nev. 901, 909, 59 P.3d 1226, 1231 (2002) (citing Warner v. District Court, 111 Nev. 1379, 1383, 906 P.2d 707, 709 (1995)).

warner, 111 Nev. at 1382-83, 906 P.2d at 709.

Id. at 1383, 906 P.2d at 709 (citing Hicks v. Feiock, 485 U.S. 624, 631-33 (1988)).

Id.; see also State ex rel. Dept. of Human Services v. Rael, 642 P.2d 1099, 1102 (N.M. 1982).

Warner, 111 Nev. at 1383, 906 P.2d at 709.

We note that this is the third contempt order issued against Rodriguez in this case. While one could argue that to some extent the court punished Rodriguez when it sentenced him to 25 days in jail, quite clearly, if the court intended to punish instead of coerce, the sentence for a third ongoing violation of a court directive would show an increase beyond the previous 20- and 25-day coercive jail sentences. However, putting a father in jail for an extended stay is counterproductive to the ultimate goal of coercing his payment of child support.

State v. Vincent, 883 P.2d 278, 283 (Utah 1994).

Nikander v. Dist. Ct. in & for First. Jud. Dist., 711 P.2d 1260, 1262 (Colo. 1986).

Vincent, 883 P.2d at 283; see also Nikander, 711 P.2d at 1262 (“In order to be deemed indigent, the defendant need not be destitute; rather, it is sufficient that the defendant lack the necessary funds, on a practical basis, to retain competent counsel.”).

NRS 171.188(1), (2).

While this statute specifically applies to criminal commitments, its applicability in the context of family law is seen by reference to it in NRS 62D.030(2), calling for the appointment of counsel to represent a child, who is alleged to be delinquent or in need of supervision, of an indigent parent or guardian.

NRS 12.015; see Nikander, 711 P.2d at 1263 (“ ‘The relevant consideration in determining indigency is whether the petitioner’s current financial status affords him equal access to the legal process.’” (quoting March v. Municipal Court for San Francisco Judicial District, 498 P.2d 437, 442 (Cal. 1972))).

Nikander; 711 P.2d at 1262.

See Vincent, 883 P.2d at 283; Hill v. State, 805 S.W.2d 651, 652-53 (Ark. 1991).

Hill, 805 S.W.2d at 652-53; Nikander, 711 P.2d at 1262.

E.g., Vincent, 883 P.2d at 283-84. Particularly relevant is a party’s ability to borrow funds. More pertinent to the situation presented here, where two people are living together and functioning as a single economic unit, whether married, related, or otherwise, consideration of their combined financial assets may be warranted. See id. at 283 n.6 (citing Kelsey v. Hanson, 818 P.2d 590, 592 (Utah Ct. App. 1991) (allowing consideration of “financial aid from family or friends” in indigency determinations); Hill, 805 S.W.2d at 653 (permitting consideration of a defendant’s control or discretionary use of funds raised by others when determining indigency); Nikander, 711 P.2d at 1262 (requiring that indigency determinations must be based on the “complete financial situation” including all sources of income)).

We believe that this case presents one of the limited scenarios where consideration of a party’s earning capacity is relevant. Cf. Vincent, 883 P.2d at 283-84 (noting that where a party claiming indigency chooses to be employed when it is convenient but then conveniently elects unemployment to claim in-digency, a trial court could reasonably conclude that that party is attempting to manipulate the justice system).

See Nikander, 711 P.2d at 1262 (discussing the standard of review applicable in cases involving the determination of indigency and the appointment of counsel and entitlement to a free transcript for purposes of appeal).

The language in Article 1, Section 8(5) of the Nevada Constitution mirrors the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution: “No person shall be deprived of life, liberty, or property, without due process of law.”

E.g., Walker v. McLain, 768 F.2d 1181 (10th Cir. 1985); Andrews v. Walton, 428 So. 2d 663, 666 (Fla. 1983); Mead v. Batchlor, 460 N.W.2d 493 (Mich. 1990); Duval v. Duval, 322 A.2d 1, 4 (N.H. 1974); Rael, 642 P.2d 1099; McBride v. McBride, 431 S.E.2d 14 (N.C. 1993); Peters-Riemers v. Riemers, 663 N.W.2d 657 (N.D. 2003).

Walker, 768 F.2d 1181; Mead, 460 N.W.2d 493; McBride, 431 S.E.2d 14; Peters-Riemers, 663 N.W.2d 657.

 452 U.S. 18 (1981) (adopting discretionary factors for the appointment of counsel from Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

 768 F.2d at 1185.

 Id. at 1183.

 Id. at 1185.

Peters-Riemers, 663 N.W.2d at 664-65 (“[T]he argument that ... the defendant holds the keys to the jailhouse door does not apply to diminish the defendant’s liberty interest. A defendant found in contempt and incarcerated does not hold the keys to the jailhouse door if the defendant cannot pay.” (citations omitted)); see also McBride, 431 S.E.2d at 18-19; Mead, 460 N.W.2d at 501-04.

Mead, 460 N.W.2d at 503.

 428 So. 2d at 665-66.

Id. at 666.

.Id.

Id.

 452 U.S. at 25-27 (holding that due process does not require the appointment of counsel in every proceeding regarding the termination of parental rights).

Id. at 26-27.

Id. at 27 (citing Mathews v. Eldridge, 424 U.S. 319 (1976)); Rael, 642 P.2d at 1102-03 (applying the Lassiter analysis in the context of civil contempt for nonpayment of child support).

 Lassiter, 452 U.S. at 27; id. at 26-27 (“In sum, the Court’s precedents speak with one voice about what ‘fundamental fairness’ has meant when the Court has considered the right to appointed counsel .... The case of Mathews v. Eldridge, 424 U.S. 319, 335 [(1976)], propounds three elements to be evaluated in deciding what due process requires, viz., the private interest at stake, the government’s interest, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.”).

 642 P.2d 1099, 1103 (N.M. 1982).

Id. at 1104.

Id.

See id. at 1102-03 (noting that the property interest at stake in a nonsupport contempt hearing is slight because “it has already been adjudicated in the original paternity and support suit”).

Rodriguez is also appealing another child custody order not involving Eddowes or her daughter.

Lassiter; 452 U.S. at 24-25 (“For all its consequence, due process has never been, and perhaps can never be, precisely defined. . . . [D]ue process is not a technical conception with a fixed content unrelated to time, place and circumstances. Rather, the phrase expresses the requirement of fundamental fairness, a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what fundamental fairness consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.” (citations and quotation marks omitted)).

Rael, 642 P.2d at 1103.

Id.

Id.