# IN THE SUPREME COURT OF THE STATE OF NEVADA

HOLLY A. BOHANNON,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE RENA
G. HUGHES, DISTRICT JUDGE,
Respondents,
and
CHRISTOPHER BOHANNON,
Real Party in Interest.

No. 69719


FILED

MAR 2 1 2017

## ORDER GRANTING PETITION IN PART

This is an original petition for a writ of mandamus or prohibition challenging a district court contempt order.

Christopher and Holly Bohannon were divorced on June 27, 2012. As part of its child custody order, the district court awarded Holly and Christopher joint legal custody of their minor child, but awarded Christopher primary physical custody. The district court later ordered that Holly's visitations with the minor child must be supervised.

Holly later admitted to unsupervised visitation with the minor child. On November 14, 2013, the district court sentenced her to one count of contempt for each of the ten instances of unsupervised contact with the minor child, for a total of 160 days of incarceration. This sentence was stayed for a period of three years, during which time the district court ordered that Holly "must not consume alcohol or illegal drugs and there must be no willful violation of Court Orders."

17-09292

On February 18, 2015, Christopher moved to modify the child custody order to require permanent supervised visitation, and for contempt, based upon allegations that Holly had been using drugs. At a hearing on Christopher's motion, Holly stated that she would voluntarily take part in a Patch drug treatment program (Patch program). Based on Holly's stipulation, the district court, on July 19, 2015, ordered Holly to "participate" in a 12-week Patch program, with the condition that if she had a single "dirty" patch her visitations would immediately become supervised.[1]

On July 28, 2015, Holly moved to reinstate her visitation rights. In his opposition and countermotion, Christopher requested that Holly be jailed for contempt of court for having at least two "dirty" patches, failing to reimburse him for the costs of the Patch program, and failing to pay him attorney fees. On September 22, 2015, the district court entered an order granting Christopher sole legal and physical custody and making Holly's supervised visitation permanent. It also ordered that Holly's supervised visitation would not be lifted until she completed an inpatient drug therapy program and was clean for one year. Lastly, the court entered an order to show cause as to why Holly should not be held in contempt for failing the Patch program.

At the order to show cause hearing, the district court found that Holly had failed to remain drug and alcohol free as required by the November 14, 2013, order and failed to "participate and complete" the Patch program. Therefore, the district court orally found her in contempt

---

[1]Although the district court order was filed on July 19, 2015, the minute order was issued on March 24, 2015.

 

and removed the stay on 30 of the 160 days of incarceration ordered on November 14, 2013.

Holly petitioned this court for extraordinary relief. She raises a number of arguments regarding the validity of the contempt order, including the contention that the district court lacked jurisdiction to find her in contempt. We conclude that the district court had jurisdiction in this case. However, to the extent the district court found Holly in contempt for the violation of its July 19, 2015, order regarding the Patch program, we find that the order is ambiguous, and may not form the basis of a contempt sentence. To the extent the district court based its contempt finding on Holly's violation of the November 14, 2013, order that she remain drug and alcohol free, we conclude that the district court failed to determine, beyond a reasonable doubt, that Holly violated the order. Therefore, we conclude that the district court's sentence of 30 days incarceration was improper, and grant Holly's petition for a writ of mandamus.

*Standard for writ relief*

A writ of mandamus may issue to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious or manifest abuse of discretion. NRS 34.160. Similarly, a writ of prohibition may issue to arrest the proceeding of any tribunal when such proceedings are in excess of the jurisdiction of such a tribunal. NRS 34.320. Neither writ may issue when there is a plain, speedy, or adequate remedy at law. *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012); *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008).

"Because [n]o rule or statute authorizes an appeal from an order of contempt, [this court] ha[s] held that contempt orders must be challenged by an original petition pursuant to NRS Chapter 34." *Paley v. Second Judicial Dist. Court*, 129 Nev. 701, 703, 310 P.3d 590, 592 (2013) (internal quotation marks omitted). As Holly has no other plain, speedy, or adequate remedy, we exercise our discretion and entertain the petition.

*The district court had jurisdiction to find Holly in contempt*

Holly first argues that due to alleged deficiencies in Christopher's affidavit the district court lacked jurisdiction to issue a contempt order. She specifically contends that the affidavit was not based on personal knowledge and improperly relied on hearsay documents.

Pursuant to NRS 22.030(2), "[i]f a contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit must be presented to the court or judge of the facts constituting the contempt." A sufficient affidavit provides the jurisdictional basis for a district court to preside over indirect contempt proceedings. *Awad v. Wright*, 106 Nev. 407, 409, 794 P.2d 713, 715 (1990), *abrogated on other grounds by Pengilly v. Rancho Santa Fe Homeowners Ass'n*, 116 Nev. 646, 5 P.3d 569 (2000). This affidavit must contain "sufficient facts . . . to set the power of the court in motion." *Strait v. Williams*, 18 Nev. 430, 431, 4 P. 1083, 1083 (1884); *see also Whittle v. Seehusen*, 748 P.2d 1382, 1387 (Idaho Ct. App. 1987), *cited with approval in Awad*, 106 Nev. at 409, 794 P.2d at 715 (holding that to be sufficient, an affidavit must state a prima facie case against the contemnor).

In this case, Christopher's affidavit indicated that Holly had returned several positive drug tests, in violation of the November 14, 2013, district court order that she remain drug and alcohol free during a

three-year period. This was sufficient to establish a prima facie case, and thus, the district court had jurisdiction over the contempt proceedings.

*The district court erred in finding Holly in contempt*

At the contempt hearing, the district court appeared to find Holly in contempt based on the violation of two separate orders: (1) the November 14, 2013, order that Holly comply with all future court orders, and remain drug and alcohol free, and (2) the July 19, 2015, order to "participate" in the Patch program.[2] For the reasons stated below, this was an abuse of discretion.

*The contempt proceedings were criminal in nature*

As a preliminary matter, the court notes that our review of the district court's contempt finding differs depending on whether the contempt sanctions imposed are civil or criminal in nature.

Generally, criminal contempt sanctions are punitive in nature, and act to punish a party for disobeying a court directive. *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 804-05, 102 P.3d 41, 45-46 (2004). In contrast, civil contempt is considered to be remedial in nature, as the purpose of civil contempt is to coerce a party into future compliance with court orders. *Id.* at 805, 102 P.3d at 46. To this end, civil contempt

---

[2]The court notes that the district court did not enter any written findings of fact or conclusions of law following the contempt hearing. While a written order is not required by statute in instances of indirect contempt, *see* NRS 22.030, the lack of a formal written order greatly complicates this court's review of this matter. The court encourages entry of a written order in future contempt proceedings. *See Houston v. Eighth Judicial Dist. Court*, 122 Nev. 544, 553, 135 P.3d 1269, 1274 (2006) (noting that a written order "serves valuable purposes: it facilitates our review, and it helps to ensure that the district court's contempt power is used with care and circumspection").

sanctions are considered conditional; any sanctions imposed will terminate upon the offending party's compliance with the court order at issue. Conversely, criminal contempt sanctions are unconditional, as they are intended to punish past disobedience, rather than compel future compliance. *Id.*

Given the differing purposes of civil and criminal contempt proceedings, different procedural safeguards apply based on whether the contempt at issue is civil or criminal in nature. Notably, if a contempt proceeding is criminal in nature, the contemnor is entitled to the assistance of counsel at any hearing, and the allegations at issue must be proven beyond a reasonable doubt. *Hicks v. Feiock*, 485 U.S. 624, 632 (1988); *Rodriguez*, 120 Nev. at 804, 102 P.3d at 45. When a contempt proceeding is civil in nature, any allegations need only be proven by clear and convincing evidence. *In the Matter of Battaglia*, 653 F.2d 419, 422 (9th Cir. 1981).

In *Lewis v. Lewis*, 132 Nev., Adv. Op. 46, 373 P.3d 878 (2016), this court set out factors for determining whether a contempt is classified as civil or criminal. These include (1) whether the sanction is punitive or remedial, (2) whether the sanction is conditional or determinate, and (3) whether the contempt order contains a purge clause, allowing a contemnor to stop all sanctions upon compliance with the court's order. *Id.* at 880-81. Applying this test, this court concluded that a district court contempt order sentencing the contemnor to 80 days of jail, that was stayed "on the condition that [the contemnor] follow the Orders of the Court," was criminal in nature because "the order failed to contain a purge clause that would allow" the contemnor to be released from the sentence. *Id.* (internal quotation marks omitted).

In this case, the November 14, 2013, order imposing a 160-day suspended sentence was virtually identical to the order set forth in *Lewis*. Notably, when the district court lifted the stay on 30 days of Holly's sentence, there appears to be no mechanism by which Holly could change her behavior to be released before the expiration of the 30-day sentence. The purpose of lifting the stay was not to coerce future compliance, but to punish Holly for alleged past transgressions. Therefore, whether the contempt finding was based on violation of the November 14, 2013, order or for violation of the July 19, 2015, order, the contempt proceedings in this case were criminal in nature.

*The July 19, 2015, order was ambiguous*

To the extent the district court based its finding of contempt on violation of the July 19, 2015, order that Holly "participate" in the patch program, the court concludes that the underlying order was ambiguous. "An order on which a judgment of contempt is based must be clear and unambiguous, and must spell out the details of compliance in clear, specific and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed on him." *Div. of Child & Family Servs., v. Eighth Judicial Dist. Court*, 120 Nev. 445, 454–55, 92 P.3d 1239, 1245 (2004) (quoting *Cunningham v. Eighth Judicial Dist. Court*, 102 Nev. 551, 559-60, 729 P.2d 1328, 1333-34 (1986)). "A court order which does not specify the compliance details in unambiguous terms cannot form the basis for a subsequent contempt order." *Id.* at 455, 92 P.3d at 1245.

Here, the July 19, 2015, order that Holly "participate" in a 12-week Patch program does not clarify whether Holly's participation in the program was sufficient to comply with the order, or whether Holly was required to participate *and successfully complete* the Patch program.

Indeed, while Holly had several patches that were "presumed" dirty, the evidence presented at the contempt hearing suggested that Holly was participating in the program. Given this ambiguity, we conclude that Holly's alleged violation of the July 19, 2015, order cannot form the basis of the district court's subsequent finding of contempt.

*The district court did not apply the correct burden of proof*

To the extent that the district court based its contempt sentence on Holly's alleged independent violation of the requirement of the November 14, 2013, order that Holly "must not consume alcohol or illegal drugs" we conclude that the district court failed to apply the correct burden of proof. As discussed above, these contempt proceedings were criminal in nature. Accordingly, to impose a contempt sentence, the district court was required to find any violation of the court's order beyond a reasonable doubt.

The district court did not apply this standard. Rather, the district court stated at the outset of the hearing that it was Holly's burden to demonstrate why she should not be held in contempt. Holly denied any alcohol use, or use of illegal drugs, and testified that during her time in the Patch program, she had taken only the prescription drugs Suboxone and Klonopin, and NyQuil. A representative from the Patch program confirmed that Holly had several "dirty" patches. Nonetheless, she conceded that these prescription drugs could have caused a dirty result. At the close of the hearing, the district court again reiterated that Holly's "burden of proof today was to appear and show cause, some good reason why she has failed."

Given these statements, it is clear that the district court failed to make a finding that Holly had violated the court's order beyond a

reasonable doubt. Therefore, we conclude that the district court abused its discretion in finding Holly guilty of criminal contempt.

Accordingly, we

ORDER the petition GRANTED AND DIRECT THE CLERK OF THIS COURT TO ISSUE A WRIT OF MANDAMUS instructing the district court to vacate the contempt sanctions imposed on Holly based on the July 19, 2015, order and the November 14, 2013, order.[3]

_____, J.
Hardesty

_____, J.
Pickering

_____, J.
Stiglich

cc:    Hon. Rena G. Hughes, District Judge, Family Court Division
       Pecos Law Group
       The Grigsby Law Group
       Michael J. Warhola, LLC
       Eighth District Court Clerk

---

[3]The court notes that this case presents potentially important public policy considerations regarding the imposition of jail time as a sanction in family law cases, especially if the sanctioned conduct has posed no actual threat to the safety or well-being of the minor child. However, based upon the current record and briefing, this issue is not fully developed for review at this time.