**136 Nev., Advance Opinion 46**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE HONORABLE RENA G. HUGHES, DISTRICT JUDGE, EIGHTH JUDICIAL DISTRICT COURT, FAMILY DIVISION, DEPARTMENT J, COUNTY OF CLARK, STATE OF NEVADA. | No. 76117 |

FILED

JUL 16 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK



Appeal from an order of the Nevada Commission on Judicial Discipline that imposed a public reprimand on a family court judge.

*Reversed.*

Law Office of Daniel Marks and Daniel Marks and Nicole M. Young, Las Vegas,
for Rena G. Hughes.

Thomas C. Bradley, Reno; Nevada Commission on Judicial Discipline and Paul C. Deyhle, General Counsel and Executive Director, Carson City, for Nevada Commission on Judicial Discipline.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

In this opinion, we consider whether a family court judge violated the Nevada Code of Judicial Conduct and examine the appropriate sanction for a violation of the Code of Judicial Conduct where the violation is not knowing or deliberate and aggravating factors are not present. This

20-26095

appeal challenges a decision of the Nevada Commission on Judicial Discipline imposing a public reprimand on Clark County Family Court Judge Rena Hughes and requiring her to take a course at the National Judicial College. The discipline stems from one of Judge Hughes' cases in which she addressed several motions by a father seeking to enforce the court's child custody orders and entered an order purportedly holding the mother in contempt and changing custody of the minor child from the mother to the father. The Commission found the change in custody was entered as a contempt sanction and concluded that Judge Hughes had thus violated canons of the Code of Judicial Conduct. We do not consider this interpretation of Judge Hughes' orders to be sound. We conclude that the Commission misconstrued her orders by disregarding relevant portions of each, failing to consider their effects, and relying inappropriately on pronouncements in court minutes.

Further, we affirm that by statute, a public reprimand may be given only where a judge has violated the Code of Judicial Conduct in a knowing or deliberate manner or where aggravating factors are present. The Commission, however, did not find that Judge Hughes knowingly or deliberately violated the Code of Judicial Conduct or that aggravating factors were present. The Commission's order thus imposed a public reprimand when it was not permitted under the statute. We conclude, therefore, that the Commission misapplied the statutes governing judicial discipline and accordingly erred in imposing a public reprimand.

*FACTS AND PROCEDURAL HISTORY*

When she took the bench, Judge Hughes inherited a case in which a divorce decree had already been entered. The divorce decree granted the mother and father joint legal custody over their minor child and

granted the mother primary physical custody, with the father to have weekend visitation rights. The father filed several motions to contest the custody arrangement and requested an order to show cause why the mother should not be held in contempt due to her continuing failure to afford him his visitation rights.

On May 12, 2016, Judge Hughes held a status check hearing regarding the parties' participation in the visitation exchanges. While the minutes from that hearing reflect that Judge Hughes admonished the mother that she would be held in contempt if she did not comply with the visitation order and drop the child off for the arranged visitation exchanges, a written order reflecting the minutes was never entered. After learning that the mother continued to fail to comply with prior visitation directives, Judge Hughes entered a June 14, 2016, written order finding that the mother had failed to facilitate the father's visitation rights and thus violated his parental rights and the court's orders. The June 14 order mirrored minutes entered by the court clerk on June 8, 2016. Judge Hughes accordingly issued an order "to show cause" regarding the mother's noncompliance, finding that she was "in contempt" of the May 12 admonishment. Judge Hughes noticed a show-cause hearing for July 28 but also ordered the parties and the child to appear for a follow-up hearing the next day, June 15.

At the June 15 hearing, Judge Hughes had a conversation with the child outside the presence of the parents and explained to the child that the court was granting the father temporary sole custody because the mother and child had not cooperated with the court-ordered visitation sessions. Judge Hughes entered an order that same day finding that the mother's actions impeded the relationship between the father and the child

and were contrary to the child's best interest, and granted the father temporary sole legal and physical custody.

At the July 28 hearing, Judge Hughes declined to hold the mother in contempt because a signed and filed order reflecting the May 12 admonishment was never entered, such that there was no order to violate.[1]

The mother filed a disciplinary complaint against Judge Hughes. The Commission conducted an initial investigation and interviewed Judge Hughes.[2] The Commission's prosecuting officer then filed a formal statement of charges based on Judge Hughes (1) holding the mother in contempt by the June 8 minute order and the June 14 written order without providing an opportunity to be heard and (2) sanctioning the mother by modifying her custody rights. At the disciplinary hearing, Judge Hughes explained that she had not held the mother in contempt but had rather only found a prima facie showing of contempt with an evidentiary hearing to be held later. Judge Hughes further testified that she modified the mother's custody rights because it was in the child's best interest, not

---

[1]Judge Hughes held the mother in contempt at the July 28 hearing for failing to have the child math tested per a prior court order and fined her $500. That contempt order is not at issue in the disciplinary proceeding or this appeal, and all subsequent references to contempt concern only Judge Hughes' response to the mother's compliance with visitation orders.

[2]The Commission submitted a list of interrogatories to Judge Hughes, which the parties address in their briefs. In doing so, the Commission exceeded its authority. See generally Andress-Tobiasson v. Nev. Comm'n on Judicial Discipline, Docket No. 77551 (Order Granting in Part and Denying in Part Petition for Writ of Mandamus or Prohibition, May 10, 2019) (holding that the Commission lacks the authority to require a judge to answer interrogatories under oath). Accordingly, we have not considered Judge Hughes' answers to these interrogatories.

as a sanction, and that an evidentiary hearing was not required for a temporary custody modification.

The Commission determined that Judge Hughes improperly held the mother in contempt and sanctioned her by altering custody and that by doing so, Judge Hughes violated five canons of the Code of Judicial Conduct: (1) Canon 1, Rule 1.1, failing to comply with the law; (2) Canon 1, Rule 1.2, failing to promote confidence in the judiciary; (3) Canon 2, Rule 2.2, failing to uphold and apply the law and to perform all duties of judicial office fairly and impartially; (4) Canon 2, Rule 2.5(A), failing to perform judicial and administrative duties competently and diligently; and (5) Canon 2, Rule 2.6(A), failing to accord a party's right to be heard. As discipline, the Commission issued a public reprimand and required Judge Hughes to take a course at the National Judicial College on managing challenging family law cases. Judge Hughes appeals.

## DISCUSSION

In an appeal from a decision of the Commission, we defer to the Commission's factual findings, determining "whether the evidence in the record as a whole provides clear and convincing support for the commission's findings," but we are not bound by its conclusions of law. *In re Fine*, 116 Nev. 1001, 1013, 13 P.3d 400, 408 (2000) (internal quotation marks omitted). We first consider whether clear and convincing evidence supports the Commission's findings before assessing its imposition of discipline based on those findings.

## I.

*Clear and convincing evidence does not support the Commission's findings that Judge Hughes held the mother in contempt and that Judge Hughes changed the custodial arrangement as a contempt sanction*

The Commission concluded that Judge Hughes violated canons of the Code of Judicial Conduct by improperly holding the mother in contempt without prior notice and an opportunity to be heard and by changing custody of the minor as a contempt sanction to punish the mother. On appeal, Judge Hughes argues that the record does not adequately support the Commission's findings and that the Commission cannot impose discipline for an allegedly incorrect legal ruling. She contends that (1) she did not hold the mother in contempt and therefore was not required to provide notice and an opportunity to be heard, (2) she was statutorily authorized to temporarily modify custody based on the child's best interest, and (3) the June 15 order's temporary custody modification was made in the child's best interest even though its findings did not include the statutorily enumerated factors.[3] As discussed below, we conclude that the Commission erred in imposing a public remand against Judge Hughes and therefore reverse.

We must consider the effect of Judge Hughes' orders to review the Commission's findings regarding them. The Commission found that Judge Hughes held the mother in contempt in both the minutes entered on June 8 and the June 14 written order for noncompliance with the court's

---

[3]Judge Hughes also argues that the Commission improperly excluded some of her proffered evidence on relevance grounds. We need not consider that claim in light of our reversal on other grounds.

visitation order.[4] The Commission found that Judge Hughes changed the custodial arrangement in the June 15 order as a sanction for this contempt. The June 14 order found that the mother was "in contempt of" the order to facilitate the father's visitation rights but provided that an order to show cause would issue *for that reason* and scheduled a hearing on that show-cause order for July 28. The order may thus be read to indicate either a present holding of contempt or a finding that the mother's conduct warranted a show-cause hearing at which contempt would then be adjudicated and sanctioned; therefore, the order is ambiguous. *See Margrave v. Dermody Props., Inc.*, 110 Nev. 824, 827, 878 P.2d 291, 293 (1994) ("A contract is ambiguous if it is reasonably susceptible to more than one interpretation."); *see also Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 570, 170 P.3d 989, 992-93 (2007) (applying "the rules of construction that pertain to interpreting other written instruments" in reviewing district court orders). Where a court's ruling is unclear, its interpretation presents a question of law, and we determine its legal effect "by construing the judgment as a whole, and . . . in the case of ambiguity, the interpretation that renders the judgment more reasonable and conclusive and brings the judgment into harmony with the facts and law of the case will be employed." *Allstate Ins. Co.*, 123 Nev. at 570, 170 P.3d at 993.

---

[4]We consider the Commission's findings regarding the June 8 minutes as applied to the June 14 written order, which corresponded to the June 8 minutes, as the Commission observed. To the extent the Commission relied on pronouncements in the minutes entered by the court clerk, such statements offer no support for its findings regarding written orders Judge Hughes entered. *See Rust v. Clark Cty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987) (providing that "[t]he district court's oral pronouncement from the bench, the clerk's minute order, and even an unfiled written order are ineffective for any purpose").

Interpreting it in light of its effect and the facts of the case, the June 14 order did not hold the mother in contempt. The contempt of court at issue was indirect rather than direct; that is, it did not occur in the judge's presence and thus could not support a summary adjudication and sanction. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 n.2 (1994) (observing that only direct contempt, which occurs "in the court's presence[,] may be immediately adjudged and sanctioned summarily"); *see also* NRS 22.030. Contempt leads to sanctions that may be either criminal, serving to punish past misbehavior, or civil, seeking to compel future compliance or to remedy the harm caused. *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 804-05, 102 P.3d 41, 45-46 (2004); *State, Dep't of Indus. Relations v. Albanese*, 112 Nev. 851, 856, 919 P.2d 1067, 1070-71 (1996) (recognizing that a civil contempt sanction seeks to remedy the injuries that result from the noncompliance); *see also Warner v. Second Judicial Dist. Court*, 111 Nev. 1379, 1382-83, 906 P.2d 707, 709 (1995) (discussing the distinction between civil and criminal contempt). Civil contempt sanctions must cease on a party's compliance, while criminal contempt sanctions are not affected by future compliance, as they relate to past misconduct. *Rodriguez*, 120 Nev. at 805, 102 P.3d at 46. Contempt may not issue absent the protections owed to criminal proceedings for criminal contempt or those of notice and an opportunity to be heard for civil contempt. *Bagwell*, 512 U.S. at 826-27.

The context makes clear that the contempt envisioned in the June 14 order was civil contempt, as the gravamen of the dispute was the mother's ongoing noncompliance with court orders, such that Judge

SUPREME COURT
OF
NEVADA

(O) 1947A

8

Hughes' evident concern was ensuring compliance.[5] And the directive to comply with prior custody and visitation orders imposed by the June 14 order did not amount to a contempt order because it did not impose any sanction to be alleviated by future compliance and could not remedy past deprivations of visitation rights, which could not be recovered. Nor did it imply that the mother's future compliance would not have any effect on any future sanction imposed at the show-cause hearing. Judge Hughes testified that her intent in the June 14 order was to find that the mother's failure to comply with the directive from the May 12 hearing to cooperate with the father's visitation rights established a prima facie case of contempt and that the matter would be adjudicated at the show-cause hearing. *Cf. Blair v. Blair*, 600 S.W.2d 143, 146 (Mo. Ct. App. 1980) (recognizing that a prima facie showing of contempt shifts the burden to the alleged contemnor to present an affirmative defense). Such a prima facie finding of contempt accompanied by notice of a show-cause hearing several weeks later shows that the intent of the finding was to compel compliance with the court's past visitation orders, as would be assessed at the show-cause hearing. Should the mother continue to violate the court's directives, the court would then hold her in contempt *and* impose sanctions at the show-cause hearing. Indeed, this is what occurred, as Judge Hughes considered the matter at the July 28 show-cause hearing. The June 14 order's other directive that

---

[5]The Commission and the parties appear to agree that civil contempt was at issue, as it was agreed that sanctions could not proceed absent notice and a hearing, while it was never urged that the mother possessed the protections incumbent on a criminal prosecution. *See Bagwell*, 512 U.S. at 826-27 (recognizing that criminal procedural protections attach to criminal contempt proceedings); *Rodriguez*, 120 Nev. at 804-05, 102 P.3d at 45-46 (recognizing that the Sixth Amendment right to counsel attaches to contempt proceedings where the sanction sought is criminal contempt).

the parties appear on June 15 to exchange custody supports this interpretation, as it compelled appearance in order to effect the court's custody order and stated that noncompliance then would be met with a contempt order and a sanction.

The Commission's interpretation disregards relevant portions of the June 14 and 15 orders. The Commission's rejection of Judge Hughes' explanation that she only found prima facie contempt in order to support a show-cause hearing where contempt could be adjudicated neglects that the June 14 order imposed no sanction and addressed sanctions only as the possible consequence of future noncompliance.[6] Insofar as the Commission determined that the custody change in the June 15 order constituted a sanction for contempt, such a reading strains credulity, as it would segregate the sanction from the noncompliance and frustrate the purpose of civil contempt by obscuring the connection between the sanction and the noncompliance. The Commission accordingly misconstrued the June 14 order as holding the mother in contempt where the facts and the legal effect of the order show otherwise. As the Commission's finding rests on a misconstruction of a legal instrument, clear and convincing evidence does not support the Commission's finding that Judge Hughes held the mother in contempt, let alone without providing notice and an opportunity to be heard.

---

[6]We agree, however, that Judge Hughes' construction of contempt in both her order and her testimony before the Commission is confusing and note that our caselaw has made clear that the coercive force of a sanction is a necessary element of civil contempt. *See, e.g., Rodriguez*, 120 Nev. at 804-05, 102 P.3d at 45-46. We urge Judge Hughes to discuss the matter more carefully in the future.

Clear and convincing evidence also does not support the Commission's finding that Judge Hughes modified the mother's custody rights in the June 15 order as a contempt sanction. The June 15 order found that the mother had "committed extreme parental alienation" against the father that was contrary to the child's best interest and that the court had previously admonished the mother that noncompliance with judicial orders would yield a contempt order and a temporary custody change. The June 15 order scheduled a custody hearing and directed that the father would have temporary sole custody, that the mother would have no contact with the child, and that noncompliance would yield a holding of contempt. At no point did the June 15 order state that the mother was being held in contempt. The June 14 order cannot support such a finding of contempt, as it provided that the according sanction would be addressed at the July 28 show-cause hearing. Part and parcel with its disregard of Judge Hughes' explanation that the contempt and sanction noted in the June 14 order would be addressed at the show-cause hearing, the Commission mistakenly interpreted the June 15 order as providing a contempt sanction.[7] This improperly conflated the two orders, despite the absence of language specifically indicating that the June 15 order sought to add a term of punishment to the June 14 directive. That the two orders both arose from the mother's continued noncompliance did not justify the Commission's conflation. Rather, Judge Hughes provided a simpler explanation: the mother's continued interference with the father's visitation rights and

---

[7]The Commission also disregarded that it is customary for a court to discuss matters in a custody dispute with a child outside the presence of the parents in concluding that Judge Hughes did so with punitive intent towards the mother. *Cf.* NRCP 16.215(d).

apparent efforts to alienate the child from the father undermined the best interest of the child, and the temporary custody change thus promoted the best interest of the child. The Commission's finding that the custody change was a contempt sanction thus lacks support by clear and convincing evidence.

Insofar as the Commission reviewed Judge Hughes' determination of the best interest of the child, the scope of her authority to change custody under NRS 125C.0055, or the validity of the order changing the custody arrangement generally, it erred. A challenge to the exercise of judicial discretion to modify child custody is a matter for appellate review, not a judicial discipline complaint. *See* NRS 1.4653(5)(b) (providing that "[w]illful misconduct" as proscribed by judicial discipline proceedings excludes "claims of error or abuse of discretion"); Procedural Rules of the Nevada Commission on Judicial Discipline (PRJDC) 8 (providing that generally "[c]laims of error shall be left to the appellate process"). The exception to this rule lies where the judicial decision involves more serious misconduct, as characterized "by evidence of abuse of authority, a disregard for fundamental rights, an intentional disregard of the law, a pattern of legal error or an action taken for a purpose other than the faithful discharge of judicial duty." NRS 1.4653(5)(b); PRJDC 8. The record before us does not depict judicial malfeasance of that exceptional nature. The Commission exceeds its authority when it reaches the merits of claims that should be contested through the appellate process.

As we determine that the Commission erred in finding that Judge Hughes held the mother in contempt—with or without notice and an opportunity to be heard—and changed custody as a contempt sanction, the

Commission accordingly erred in concluding that Judge Hughes violated canons of the Nevada Code of Judicial Conduct on these bases.

*II.*

*The statutes governing judicial discipline do not support the discipline imposed based on the Commission's findings*

The Commission publicly reprimanded Judge Hughes and ordered her to take a course on managing difficult family law cases. The Commission's discipline was based on its determination that her offenses were serious and its consideration of mitigating circumstances, specifically Judge Hughes' lack of prior discipline, her character reference letters, and her inexperience at the time of these events. We conclude that the Commission's discipline cannot stand on its record—even if we agreed with its findings of misconduct, which we do not—and therefore disagree further with its order.

Under Nevada statutes, a judge may be admonished, censured, reprimanded, or subject to other discipline for misconduct, depending on the misconduct's severity. NRS 1.4677. If a violation of the Code of Judicial Conduct is not knowing or deliberate, the range of sanctions available to respond to that conduct is limited. A judge may be publicly reprimanded for a violation that is not knowing or deliberate only if aggravating factors are present, while a reprimand may issue for a knowing or deliberate violation notwithstanding mitigating factors. NRS 1.4677(3). A public reprimand is a "severe" sanction. NRS 1.4294. Public admonishment is a lesser form of discipline that may be imposed absent aggravating factors for a violation that is not knowing or deliberate. NRS 1.4677(2). Where substantial mitigating factors are present, the judge may be censured for the disciplinary violation. NRS 1.4257; NRS 1.4653(2). The statutory scheme envisioned that these responses constituted distinct forms of

sanction. *See* NRS 1.4253 (defining admonish); NRS 1.4257 (defining censure); NRS 1.4294 (defining reprimand); NRS 1.4677(1)(a) (providing that as forms of discipline the Commission may "[p]ublicly admonish, publicly reprimand or publicly censure" a judge); *see Bd. of Cty. Comm'rs v. CMC of Nev., Inc.*, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983) (noting that a statute should be interpreted to give each word meaning without rendering any part redundant).

There was no evidence, let alone clear and convincing evidence, that Judge Hughes committed a knowing or deliberate violation.[8] In addition, the Commission did not find any aggravating circumstances. This excluded the possibility of imposing a public reprimand. Indeed, the Commission erred further, as it concluded that this severe sanction was apt even after finding that numerous *mitigating* circumstances were present. Where the violation committed was not knowing or deliberate, mitigating circumstances are present, and aggravating circumstances are not, discipline is limited to public admonishment or censure. NRS 1.4257; NRS 1.4677(2). Thus, the Commission failed to correctly apply the statute that provided for the sanction it imposed.[9] We urge the Commission to take care

---

[8]While the Commission did not expressly address whether a violation was knowing or deliberate, it appears to have implicitly conceded that Judge Hughes did not commit a knowing or deliberate violation in asserting by footnote that it could impose discipline without finding willful misconduct. *See* NRS 1.4653(5)(b) (providing that "willful misconduct" includes conviction of a crime involving moral turpitude or certain "knowing or deliberate" acts of misconduct).

[9]We note that other statutes provide for less severe discipline than a public reprimand. Here, an appropriate resolution may well have been to dismiss the complaint without holding a hearing and issue a non-

SUPREME COURT
OF
NEVADA

(O) 1947A

in future proceedings to ensure that it limits the discipline it imposes to that permitted by statute in light of the record before it.

## CONCLUSION

A public reprimand may not issue absent a knowing or deliberate violation of a canon of the Code of Judicial Conduct or aggravating factors. The Commission found neither and accordingly imposed discipline contrary to the statutes governing judicial discipline. Further, the statutory scheme and the Commission's rules instruct that disciplinary proceedings generally should not arise from disputes over legal decisions or factual findings, absent exceptional circumstances such as where a judge abuses her authority, disregards fundamental rights, intentionally disregards the law, or exhibits a pattern of error inconsistent with faithfully discharging the judicial function. For claims where relief may ordinarily lie in the appeals process, disciplinary proceedings should be pursued sparingly. Proceeding otherwise risks chilling the exercise of judicial discretion and harms the administration of justice. The Commission also erred in interpreting Judge Hughes' orders, relying

___

disciplinary letter of caution, warning Judge Hughes of the need to more closely supervise the clerk in the preparation of the minutes so that the minutes entered do not suggest that the court has held a party in contempt when it has not. *See* NRS 1.4291(2); NRS 1.467(2).

inappropriately on court minutes and construing her orders without considering their effect and context. The Commission's discipline here rested on a misappraisal of both the relevant facts and applicable rules and law, finding a violation that did not occur and imposing discipline that could not stand on the record. We therefore reverse.

_____, J.
Stiglich

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

CADISH, J., with whom SILVER, J., agrees, concurring in part and dissenting in part:

Respectfully, I concur in part and dissent in part. I agree with the majority's conclusion that the Commission on Judicial Discipline erred in imposing a public reprimand to discipline Judge Hughes. I write separately, however, to urge that some form of discipline was warranted here. While the Commission erred in its application of the relevant statutes, I conclude that the record supports its determination that Judge Hughes violated several canons of the Code of Judicial Conduct and that discipline was therefore warranted. Accordingly, I would reverse and remand for the Commission to reevaluate the appropriate discipline for the violations found, imposing discipline suitable for violations that are not knowing or deliberate and where aggravating factors are not present.

_____, J.
Cadish

I concur:

_____, J.
Silver